## Richmond

DAVID WILLIAM STONER v. T. J. ROBERTSON, ADM'R, ETC.

November 28, 1966.

Record No. 6281.

Present, All the Justices.

*Nathan H. Smith* (*J. Calvitt Clarke, Jr.; Sands, Anderson, Marks & Clarke,* on brief), for the plaintiff in error.

*A. R. Kingdon* and *J. C. Hutt* for the defendant in error.

SNEAD, J., delivered the opinion of the court.

As a result of a single car accident, Hobart Donald Singleton, a guest passenger in an automobile owned and operated by David William Stoner, was killed. J. T. Robertson, Administrator of Singleton's estate, plaintiff, instituted an action against Stoner, defendant, to recover damages for the wrongful death of his decedent. The motion for judgment alleged, among other things, that

Stoner operated his vehicle in a "grossly negligent and careless manner, and in wanton disregard of the safety" of Singleton. After overruling defendant's motions to strike plaintiff's evidence made at the conclusion of plaintiff's evidence and again at the conclusion of all the evidence, the case was submitted to the jury. They were instructed on the doctrines of gross negligence, contributory negligence and assumption of risk. A verdict for plaintiff in the sum of $35,000 was returned, and we granted defendant a writ of error to the judgment entered on the verdict.

In his assignments of error, defendant claims that the court erred (1) in failing to hold, as a matter of law, that plaintiff's decedent assumed the risk of defendant's negligence which barred a recovery; (2) in failing to hold, as a matter of law, that plaintiff's decedent was guilty of contributory negligence which barred a recovery; (3) in excluding certain evidence; and (4) in refusing an instruction.

The facts are not in material conflict and may be summarized as follows:

At approximately 9 a.m. on Sunday, March 24, 1963, Stoner, the defendant, and a companion, Edward L. Price, left defendant's apartment near Dahlgren, Virginia, where they had spent the night and drove a distance of about three miles to Price's house in Owens. Upon their arrival about 9:30 a.m. they found their friends William K. Gass and Donald Singleton, plaintiff's decedent, who had spent the night in Price's home, in bed asleep. Within a few moments they got out of bed and Singleton and Stoner began drinking from a fifth of whiskey, which had been partially consumed. Later Gass had one drink with them. At about 11 a.m. a neighbor across the street, identified as Milton, came over and had "a couple drinks." Price did not join in the drinking. By 12:30 p.m. the bottle had been emptied and the party moved to Milton's house for more whiskey.

Shortly after their arrival at Milton's home they were joined by Roger Shermer. Everyone had a "minimum of two rounds [whiskey] a piece." As Shermer, Price and Stoner expressed an interest in renting houses at Colonial Beach, it was decided that they would go there. Milton remained at his home. At approximately 1:30 p.m. the other members of the party left in two cars. Stoner drove his Chevrolet sedan accompanied by Gass and Singleton on the front seat. Gass was seated in the middle. Shermer drove the other car and Price was his passenger.

As they left Milton's home, the Shermer car was in the lead and remained in that position until it turned south on Route 301. Then Stoner proceeded to pass the Shermer vehicle which was traveling between forty and forty-five miles an hour. Stoner testified "I went sixty and then got up to ninety a couple of times." Gass told Stoner "he was driving too fast" and requested him to slow down. Stoner did slow down for about "a quarter of a mile", but then Singleton told Stoner in substance to "speed up, we won't never get there."

Stoner turned off Route 301 into Poplar Neck road, a short cut to Colonial Beach. This road is narrow, crooked, hilly and hard-surfaced. Stoner drove at speeds up to seventy miles an hour and "a number of times" the vehicle was on the wrong side of the road. At one point the left rear wheel went into a ditch on the wrong side of the road. Gass then told Stoner "that he better slow down before he tore his car up", but Singleton slapped Gass on the leg and remarked to Stoner "[g]ive it hell, Dave." Stoner did not slacken his speed and Gass "was scared to death." He asked Stoner to let him out of the car a number of times. Finally, he persuaded Stoner to stop his car at the intersection of the road and Route 205 so that he could ride in the Sherman vehicle which was following.

The three occupants got out of the automobile. Gass and Singleton made an inspection of the left side to ascertain if any damage had been done when the car ran in the ditch. No damage was found and they sat in the car until Shermer arrived several minutes later. Gass secured permission from Shermer to ride with him. Singleton, who made no such request, was seated on the outside and stepped out of Stoner's automobile to permit Gass to leave it. Then Singleton returned to the front seat of the Stoner vehicle. After Gass had entered Shermer's car, Stoner remarked, "I will beat you to the beach" and drove ahead of the Shermer vehicle east on Route 205. According to Gass, Singleton laughed at this remark, and the Stoner car "went out of sight immediately." The fatal accident occurred several minutes later approximately four miles down the highway at about 2 p.m.

At the scene, Route 205, also known as Colonial Beach road, is black topped, has two lanes which are divided by a broken white line, and runs generally east and west. The weather was clear, the road was dry, and there were no defects in it. There is a concrete bridge which crosses a creek. Metal guard rails extend for some distance on each side. The bridge is the dividing line between King George county and Westmoreland county. King George is on the

west side. In the immediate vicinity of the accident, the highway is straight and level, but a short distance west of the bridge, the direction from which Stoner was coming, there is a slight downgrade and curve to the left.

Walton F. Klotz testified that he was traveling west on Route 205 and when he first saw defendant's vehicle coming towards him it was moving at a rate "over a hundred miles an hour" and it appeared that "all four wheels were off the ground"; that it was "hurdling"; that the car went off the road and "hit a soft spot of ground which threw the car back on the road"; and that at one time "it was approaching sideways towards me at a high rate of speed." He further testified that as the car crossed the bridge it "straightened out and I went by it"; and that it overturned and crashed just east of the bridge.

Trooper C. T. Lane arrived at the scene shortly after the accident and made an investigation. He testified that the Stoner car, after skidding and hitting the guard rail and an embankment, came to rest on its top about 225 feet east of the bridge, and that it traveled approximately 627 feet from the point where it first veered off the highway onto the shoulder until it came to a standstill. He said that as a result of the wreck the vehicle was a "total loss", Singleton was killed instantly, and Stoner was rendered unconscious and hospitalized.

In this State a driver must be guilty of gross negligence before a guest passenger can recover for his injuries. Whether gross negligence has been proved depends upon the facts and circumstances of each case. *Scott* v. *Foley*, 205 Va. 382, 386, 136 S.E. 2d 849, 852. Here, defendant does not contest that he was guilty of such negligence. Nevertheless, the evidence shows that defendant operated his vehicle in a manner that showed an utter disregard of prudence that amounted to a complete and shocking neglect of the safety of plaintiff's decedent. Unquestionably this conduct constituted gross negligence. *Barham* v. *Bank*, 206 Va. 153, 155, 142 S.E. 2d 569, 571. However, the critical issue is whether, as a matter of law, plaintiff's decedent assumed the risk of defendant's negligent conduct.

In 2 M. J., Automobiles, § 70, p. 551, it is said:

"* * * Generally, a guest in an automobile, to avoid contributory negligence or assumption of risk, must be alert and intelligent and if protests are vain must resort to such other means of securing safety as may be presented, and must alight from the car if opportunity is given, to avoid exposure to further recklessness of the driver." See *Young* v. *Wheby*, 126 W.Va. 741, 30 S.E. 2d 6.

In *Arrington, Adm'r* v. *Graham, Adm'r*, 203 Va. 310, 124 S.E. 2d 199, plaintiff's decedent, Graham, was a guest passenger in an automobile operated by defendant's decedent, Aliff. The car was being driven in a reckless manner and at a very high rate of speed when it struck a bridge abutment. The accident resulted in the death of both occupants. Earlier both parties had been riding and drinking alcoholic beverages with friends. They stopped at a filling station and everyone got out of the automobile except Aliff, the driver. One of the passengers, Cline, refused in the presence of Graham a ride home because of the reckless manner in which Aliff had been driving. However, Graham got in the car and Aliff drove off. He later returned and again invited Cline to ride with them. But since Aliff would not let Cline drive he declined the invitation. Aliff then drove off with Graham and the fatal accident occurred shortly thereafter. Graham's administrator instituted an action against Aliff's administrator for death by wrongful act. Plaintiff recovered a verdict for $10,000 upon which judgment was entered. On appeal we reversed the judgment and held that the evidence showed, as a matter of law, that Graham assumed the risk of Aliff's negligence and was barred from a recovery. Concerning the doctrines of assumption of risk and contributory negligence, we had this to say:

"The doctrines of assumption of risk and contributory negligence are not identical. They are closely associated; but there is a distinction between them which has not always been observed in the decisions.

" 'The essence of contributory negligence is carelessness; of assumption of risk, venturousness. Thus an injured person may not have acted carelessly; in fact, may have exercised the utmost care, yet may have assumed, voluntarily, a known hazard. If so, he must accept the consequence.' *Hunn* v. *Windsor Hotel Company*, 119 W.Va. 215, 193 S.E. 57, 58; *Tiller* v. *N. & W. Ry Co.*, 190 Va. 605, 612, 58 S.E. 2d 45.

"It is now fairly well settled that where one voluntarily assumes the risk of injury from a known danger, he is debarred from a recovery in negligence cases. *Weston* v. *Hospital of St. Vincent of Paul*, 131 Va. 587, 593, 107 S.E. 785, 23 A.L.R. 907; 38 Am.Jur., Negligence, § 171, pages 845 and 846." 203 Va. at p. 314, 124 S.E. 2d at p. 202. See also *Davis* v. *Sykes*, 202 Va. 952, 954, 121 S.E. 2d 513, 514; 61 C.J.S., Motor Vehicles, § 489 (c), p. 111; 1 Blashfield, *Automobile Law and Practice*, 3 ed., Assumption of Risk, § 64.1, p. 538.

In the case at bar, Singleton, plaintiff's decedent, voluntarily remained in Stoner's car in spite of the fact that Stoner had driven at excessive speeds, had driven "a number of times" on the wrong side of the narrow, crooked and hilly road, and had driven off the road into a ditch. Further, Singleton condoned and fully approved of Stoner's actions because he encouraged him to "speed up" and to "[g]ive it hell" after Gass had asked Stoner to slow down. Singleton's actions are in sharp contrast with those of Gass. Gass continually protested the reckless manner in which Stoner was operating his vehicle and asked to be let out of it. At the intersection of Poplar Neck road and Route 205, Gass did get out of the car and rode with Shermer, because he had been "scared to death". Under these circumstances Singleton, in the exercise of ordinary care for his own safety, should have left the Stoner vehicle also, but he elected to continue to ride with Stoner and the fatal crash followed.

While there was evidence that Singleton had been drinking whiskey, there was no evidence that he was under the influence of intoxicants to the extent that he could not understand and appreciate the dangers which he faced. Gass testified:

"Q. Now then, on this ride, I gather it was a right wild ride from what you say?

"A. Yes, sir.

"Q. What was Mr. Singleton's condition with regard to sobriety during that ride?

"A. You could tell that he had been drinking, but he knew what was going on.

"Q. He did?

"A. Yes, sir.

"Q. I suggest to you that he might have been drunk. Was he drunk?

"A. No, he was not.

"Q. He was not?

"A. No.

"Q. At the time when the car came to a stop at the junction of 205 Poplar Lane—Poplar Neck Road, what was his condition at that time, Mr. Gass?

"A. It seemed to be the same as before. You could tell he had been drinking, but he was aware of what was going on.

"Q. Mr. Gass, you are quite positive that Mr. Singleton was not stone blind drunk so-to-speak at the time this car pulled off?

"A. I am positive."

We hold as a matter of law that Singleton fully appreciated and voluntarily assumed a known hazard by continuing to ride with Stoner. Hence, he is barred from a recovery. In view of this conclusion, we do not deem it necessary to discuss the other assignments of error.

Accordingly, the verdict of the jury is set aside; the judgment appealed from is reversed; and final judgment is entered here for defendant.

*Reversed and final judgment.*