## Richmond

JOHN J. BUDZINSKI, ADMINISTRATOR OF THE ESTATE OF DEBRA K. BUDZINSKI, DECEASED v. LAURIE WAYNE HARRIS.

June 12, 1972.

Record No. 7727.

Present, Snead, C.J., I'Anson, Harrison, Cochran and Harman, JJ.

*J. Ronald Lynch* (*Howard, Stevens, Lynch, Cake & Howard*, on brief), for plaintiff in error.

*William Rosenberger, Jr.*, for defendant in error.

COCHRAN, J., delivered the opinion of the court.

On October 19, 1969, at about 11:30 p.m., Debra Budzinski, age 14, was a guest passenger in a car driven by Laurie Wayne Harris, age 19. As the vehicle proceeded south at a high rate of speed on U. S. Route 29 about one mile south of Colleen in Nelson County, it struck the rear of another car travelling in the same direction, ran off the highway and was demolished. Debra was killed. The driver and Debra's cousins, Calvin Harris, Jr., age 18, and his sister, Rebecca (Becky), age 14, who were also passengers in the car, survived.

Debra's administrator brought this wrongful death action against the defendant, Laurie Wayne Harris, alleging that his gross negligence proximately caused the fatal accident. A jury trial resulted in a verdict for the administrator in the amount of $25,721.75. But the trial court, holding that Debra had assumed the risk and had been guilty of contributory negligence, set aside the verdict and entered judgment for the defendant notwithstanding the verdict. We granted the administrator a writ of error. The defendant has assigned cross-error to the granting of certain instructions by the trial court.

Debra lived in Fairfax County, where she was a ninth grade high school student. She and her parents were visiting relatives of her mother in Nelson County on the date of the accident. Debra was staying overnight with the mother of Calvin Harris, Jr. and Becky while her parents remained in the home of another relative.

Debra agreed to go to a dance that evening with Laurie, with whom she had never before had a date. Calvin and Becky decided to accompany them. That afternoon Calvin and Laurie each drank four cans of beer out of Debra's sight. In addition, they consumed

one or two beers in her presence at Calvin's house, after which they ate some food.

The four left for the dance in Laurie's car around 6:00 or 7:00 p.m. On the way Calvin and Laurie purchased 18 cans of beer. Finding few people at the dance when they arrived, they drove around back roads to look at damage caused by a recent flood, twice returning briefly to the dance before moving on again. During the evening the two boys drank five or six beers each, Becky drank one and Debra also drank some. After they arrived at the Dairy Isle in Colleen about 11:00 p.m. to get something to eat, Laurie and Calvin drank whiskey from a friend's bottle. Although Becky saw them each take a drink of the whiskey there is no evidence that Debra saw this incident or knew of it.

Someone at the Dairy Isle asked Laurie to go to Amherst for beer, where it could be purchased until midnight, but there is no evidence that Debra was aware of this request. Laurie took off "burning rubber", Debra riding beside him on the front seat and Calvin and Becky sitting on the rear seat. The car, accelerating to a speed estimated at 80 to 100 miles per hour, was wrecked about a mile from the Dairy Isle.

Calvin and Becky testified that earlier in the evening Laurie had driven fast but had slowed down when they told him to do so. They also testified that there was nothing unusual about Laurie's driving before they stopped at the Dairy Isle. Becky stated that after the boys had drunk five beers they appeared to giggle more than usual and Laurie drove a little faster than before. Calvin testified that he did not believe that anyone in the car had time to say anything to Laurie about his driving between the Dairy Isle and the scene of the accident and Becky said that she did not speak out because she was "frozen".

Robert Harris, a cousin of Laurie's, testified that Laurie gave him two cans of beer at the Dairy Isle, that he could smell beer on Laurie at that time but that Laurie was not stumbling, his speech was not slurred and he acted no differently than he usually did.

The distinction between contributory negligence and assumption of risk as to one who rides with a drinking driver has not always been clearly delineated in the decisions of this Court where both defenses were in issue. *See Meade, Adm'r. v. Meade, Adm'r.*, 206 Va. 823, 828, 147 S.E.2d 171 (1966). However, although these defenses often overlap, in general they can be distinguished. *See* W.

Prosser, *The Law of Torts* § 68, at 440-41 (1971) [hereinafter cited as *Prosser*]; *Restatement (Second) of Torts* § 466, comment d and § 496A, comment d (1965) [hereinafter cited as *Restatement*]. One who voluntarily elects to ride with a driver, knowing that the driver has been drinking to such an extent that his ability to drive has been or is likely to have been impaired and fully appreciating the nature and extent of the risk involved in riding with him, has assumed the risk. *See, e.g., Leslie v. Nitz*, 212 Va. 480, 184 S.E.2d 755 (1971); *Arrington, Adm'r. v. Graham, Adm'r.*, 203 Va. 310, 124 S.E.2d 199 (1962). Knowledge of the risk involved is essential to its assumption.

On the other hand, one who knows *or in the exercise of ordinary care should know* that the driver had been drinking intoxicating beverages to such an extent that his ability to drive has been or is likely to have been impaired and voluntarily enters the automobile or continues as a passenger after a reasonable opportunity to leave is contributorily negligent in the absence of exigent circumstances which make such conduct reasonable. *See Wright v. Tate*, 208 Va. 291, 156 S.E.2d 562 (1967). Thus, knowledge of the risk is not necessary if, in the exercise of ordinary care, one should have known of its existence. If the risk was known and its assumption was unreasonable under the circumstances, there would be contributory negligence as well as assumption of risk.

The evidence in this case presented a jury question on the issue of contributory negligence. There was evidence that, after the four young people left the Dairy Isle, Debra had neither time nor opportunity to protest Laurie's driving or leave the automobile before the accident occurred. Furthermore, there was evidence that Laurie had not operated the vehicle negligently before leaving the Dairy Isle. The jury could find that there was nothing to put Debra on notice that Laurie's ability to operate the car had been or was likely to have been impaired by his drinking. Her cousins, Calvin and Becky, who knew Laurie much better than she did and had seen him drink whiskey at the Dairy Isle, showed no reluctance to continue as passengers in his car. Certainly we cannot say that because of his drinking Laurie's ability was impaired and that Debra knew, or in the exercise of ordinary care, should have known this and yet continued to ride in the car, as we must to hold her contributorily negligent as a matter of law. *Wright v. Tate, supra* at 296, 156 S.E.2d at 565. Moreover, even if Debra knew that Laurie's ability to drive was impaired she might not have been negligent in

continuing to ride with him in the light of the alternatives available to her. *See Restatement* § 466, comment e.

No evidence was introduced which indicated that Debra expressly assumed the risk of riding with Laurie, but the quantity of beer which he consumed in her presence was sufficient to raise the issue of implied assumption of risk. However, we cannot say that, as a matter of law, Debra knew that Laurie's ability was or was likely to be impaired and fully appreciated the risk of riding with him. As is usually true in cases of implied assumption of risk, a jury question was presented on these issues. *See Prosser* § 68, at 447; *Restatement* § 496D, comment c.

Concluding as we do that the trial court erred in setting aside the jury verdict we must consider the assignments of cross-error to determine whether the verdict should be reinstated or the case remanded for a new trial.

■ The administrator concedes that Instruction No. 5, granted over defendant's objection, is incorrect because it deals with simple negligence rather than gross negligence. Nevertheless, he contends that the granting of this instruction constituted harmless error because other instructions defined gross negligence and clearly required a finding of gross negligence in order for the administrator to recover. We do not agree. We think that Instruction No. 5 might have confused the jury and that the granting of it was prejudicial to the defendant. *Ferguson* v. *Ferguson*, 212 Va. 86, 181 S.E.2d 648 (1971).

As the case must be remanded for a new trial we must consider Instructions Nos. 10[1] and 11[2], also granted over defendant's objections.

---

[1] Plaintiff's Instruction No. 10:

"The Court instructs the jury that if you believe from a preponderance of the evidence in this case that the defendant drank intoxicating beverages on the day of the accident, and that the defendant was so affected by such intoxicating beverages that he operated his car in a grossly negligent manner and thereby lost control thereof and caused an auto accident and thereby killing Debra Budzinski and that Debra Budzinski did not know or in the exercise of ordinary care, should not have known that the defendant was so affected by such intoxicating beverages as to render him an unsafe driver when Debra Budzinski entered and rode in the car, or did not have an opportunity to leave said car after discovering the defendant's condition, if she did discover such condition, then you should find your verdict for the plaintiff."

[2] Plaintiff's Instruction No. 11:

"According to the table of life expectancy, the expectancy of life of a female aged 14 years is 61.5 years; the life expectancy of a female aged 54 years is 24.4 years; the life expectancy of a male aged 53 years is 20.5 years."

■ Instruction No. 10 incorrectly informed the jury that they could find that Debra was barred from recovery only if she knew "or in the exercise of ordinary care, should have known that the defendant was so affected by . . . intoxicating beverages as to render him an unsafe driver . . . ." The instruction failed to distinguish contributory negligence and assumption of risk in accordance with the rules set forth herein. Moreover, Debra did not have to know or be charged with notice of the fact that Laurie's drinking rendered him "unsafe" to preclude recovery by the administrator. Knowledge or notice that Laurie's ability to drive was likely to have been impaired would have had the same effect. Finally, although the defendant has understandably not raised the point, we note that the instruction improperly omitted any reference to circumstances which could have rendered Debra's decision to remain in Laurie's car reasonable, and therefore not negligent, even though she may have assumed the risk.

■ Instruction No. 11 set forth the life expectancies, based upon mortality tables, of a girl Debra's age, a woman her mother's age, and a man her father's age. We agree with the defendant that where, as in this case, the damages are limited to solace and expenses incident to death, life expectancy of the decedent or of any beneficiary is irrelevant and Instruction No. 11 should not have been given.

*Reversed and remanded.*