908 F.2d 968
 30 Fed. R. Evid. Serv. 896
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Betty J. WEST, Plaintiff-Appellant,
v.
WINTERGREEN PARTNERS, INC., a Virginia Corporation;
Wintergreen Development, Inc., a Virginia
Corporation, Defendants-Appellees.
 No. 89-3290.
 United States Court of Appeals, Fourth Circuit.
 Argued: April 6, 1990.
Decided: June 25, 1990.
 
 Appeal from the United States District Court for the Western District of Virginia, at Charlottesville. James H. Michael, Jr., District Judge. (CA-88-9-C).
 Christine Doyle Thomson, Smith, Taggart, Gibson & Albro, Charlottesville, Va., argued, for appellant; Thomas E. Albro, Smith Taggart, Gibson & Albro, Charlottesville, Va., on brief.
 Jay T. Swett, McGuire, Woods, Battle & Boothe, Charlottesville, Va., argued, for appellees; Laura C. Rublee, McGuire, Woods, Battle & Boothe, Charlottesville, Va., on brief.
 W.D.Va.
 AFFIRMED.
 Before WIDENER and SPROUSE, Circuit Judges, and SMITH, United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 This case arises out of an accident in which Betty J. West was injured while skiing at the Wintergreen resort on March 2, 1986. West was skiing Wintergreen's Diamond Trail beginner slope when she skied into an object that was covered with snow, injuring her knee. Later inspection revealed that the object was a man-made drain. The drain was not flagged or marked in any way.
 
 
 2
 West brought a diversity action in the United States District Court for the Western District of Virginia alleging that Wintergreen, through its employees, had a duty to provide warnings or markings to notify her of the existence of the drain, which she alleged was in the skiable area of the slopes. She also asserted that Wintergreen had failed to remove the hazard from the skiable area or groom the ski area to cover the hazard with snow.
 
 
 3
 Wintergreen defended on the basis of a release signed by West and the affirmative defenses of contributory negligence and assumption of the risk. On June 16, 1989, the jury returned a verdict for Wintergreen. West appeals, arguing that the district court erred in instructing the jury on assumption of the risk and in admitting into evidence an accident report prepared by Wintergreen employees. Finding West's contentions to be without merit, we affirm.
 
 
 4
 West first asserts that the district court erred in instructing the jury on assumption of the risk because the evidence was insufficient to establish that West voluntarily consented to a known risk that proximately caused her injury. Briefly stated, West's argument is as follows: Virginia law controls the issue of assumption of the risk, and the Virginia Supreme Court has approved the defense of assumption of the risk only in cases where a plaintiff has voluntarily consented to a known risk;[1] the relevant risk in this case was the risk of skiing into a hidden man-made obstacle on the groomed areas of the slopes; and West did not voluntarily assume a known risk because she was unaware of the presence of concealed man-made hazards in the groomed areas of the snow.
 
 
 5
 Wintergreen contends that the relevant risk in this case was the risk of skiing out of control; that West was aware of this risk; and that West was in fact skiing out of control and that skiing in this manner caused her accident. West responds that even if the relevant risk was the possibility of skiing out of control, the evidence did not indicate that she was doing so.
 
 
 6
 This court agrees with West that a skier does not assume the risk of colliding with hidden man-made objects in the groomed areas of a ski slope. However, a skier does assume the risk of colliding with objects beyond the groomed area of the snow if she is skiing out of control. Whether the drain was located in a groomed area of the snow and whether West was skiing out of control at the time of the accident were questions of fact for the jury. If the jury resolved these issues in favor of Wintergreen, then it was entitled to conclude that West had voluntarily assumed a known risk that proximately caused her injuries.
 
 
 7
 Our review of the record reveals that there was sufficient evidence on both of these points to allow them to go to the jury. West testified that she was aware of the risk of skiing out of control because "when [she] tried to ski once before [she] really hated it because [she] felt always out of control." Joint App. at 20-21. Although West took a skiing lesson to increase her control, an accident report admitted as Defendant's Exhibit 11 stated that the skier's (West's) explanation of the cause of the accident was skiing "out of control."[2] Moreover, West was attempting to ski around a woman in her path at the time of the accident, Joint App. at 27-29, and Wintergreen's contention that the drain was beyond the skiable area of the slope supported an inference that West was skiing out of control.
 
 
 8
 With respect to the placement of the drain, Wintergreen personnel testified that it was located off the skiable terrain in an ungroomed section of the slope. Joint App. at 77, 95-96. Wintergreen also introduced photographs showing the drain's proximity to trees and exposed metal pipes. In light of this evidence concerning the manner of West's skiing and the location of the drain, the district court did not err in instructing the jury on assumption of the risk.
 
 
 9
 West next contends that even if the defense of assumption of the risk was properly before the jury, the district court's instructions were incomplete in that they failed to define assumption of the risk and did not set forth the burden of proof on this issue. "[I]n considering errors in instructions, this court must look to the entire charge, and if the instructions, taken as a whole, fairly and adequately state the pertinent legal principles involved, then affirmance of the court below is required." Chavis v. Finnlines Ltd., 576 F.2d 1072, 1076 (4th Cir.1978). "The test of adequacy of instructions properly challenged on appeal is not one of technical accuracy in every detail. It is simply the practical one of whether the instructions construed as a whole, and in light of the whole record, adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party." Spell v. McDaniel, 824 F.2d 1380, 1395 (4th Cir.1987), cert. denied, 484 U.S. 1027 (1988).
 
 
 10
 In the case at bar, the district court instructed the jury on assumption of the risk as follows:
 
 
 11
 Wintergreen further claims that the plaintiff assumed the risk of an injury by accident and for this reason is also not entitled to recover for her injuries.... Thus, the issues in this case are joined as follows with regard to Betty Joyce West's claim for personal injuries.... 5. Did the plaintiff voluntarily assume the risk of injury? 6. If she did so assume the risk of injury, was this the proximate cause of the accident? And again on these issues the defendants have the burden of proof.... Now, if you find that the defendant Wintergreen was negligent and that its negligence proximately caused injury or damage to Miss West and if you further find that Miss West was not contributorily negligent and did not assume the danger by which she was injured, then you must find in favor of Miss West on her claim....
 
 
 12
 Joint App. at 160-62 (emphasis added). The court had already instructed the jury regarding the preponderance-of-the-evidence standard.
 
 
 13
 Construed in light of the entire record and taken as a whole, the district court's instructions fairly and adequately stated the legal principles controlling the affirmative defense of assumption of the risk. Although the district court might have provided a more complete explanation, the court instructed the jury that assumption of the risk requires voluntary consent to the risk, that the risk assumed must be the proximate cause of the injuries sustained, and that the defendants had the burden of proof on this issue. Moreover, the court neither misled nor confused the jury. Because the district court set forth the law and did not unfairly mislead the jury, this court finds no reversible error in the assumption of the risk instructions.
 
 
 14
 Finally, West asserts that the district court erred in admitting into evidence an accident report prepared by Wintergreen employees after West's fall. The report was admitted pursuant to Fed.R.Evid. 803(6), which provides:
 
 
 15
 The following are not excluded by the hearsay rule, even though the declarant is available as a witness: ...
 
 
 16
 (6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.
 
 
 17
 The proponent of such a business record must establish through the custodian or other qualified witness that (1) the document was made at or near the time of the matters recorded, (2) the document was prepared by, or from information transmitted by, a person with knowledge of the matters recorded, (3) the document was prepared by persons engaged in some undertaking, enterprise, or business which can be fairly termed a regularly conducted business activity, and (4) it is the regular practice of the business to make documents of this nature. See Fed.R.Evid. 803(6); Clark v. City of Los Angeles, 650 F.2d 1033, 1036-37 (9th Cir.1981), cert. denied, 456 U.S. 927 (1982).
 
 
 18
 Douglas Gordon Molyneaux, Wintergreen's ski patrol director, testified that the ski patrol consists of approximately 120 professionals and volunteers who are responsible for the safety of Wintergreen's skiers on the slopes. Joint App. at 117-18. Molyneaux testified that accident reports are maintained in the ordinary course of business at Wintergreen, Joint App. at 107, and he described the form and the circumstances under which they are completed as follows:
 
 
 19
 Everybody that comes in we fill out an industry standard form which entails all of the pertinent data about the patient, name, age, occupation I think, the weather conditions, the time of day, the conditions on the hill. There is spots in there for patroller comments on first aid, for patroller comment on the accident scene itself. There is spots in there for the patient's description of how the accident occurred on the site, and there is room for information on rental skis, information on everything that could possibly apply to the accident.... The patrol is instructed any time any injury comes in to complete that report before the patient leaves the area and to complete it completely. If there is any question, any unanswerable question, then they would put N/A or something in the box, something to indicate they went through the entire form and filled it in.... [With respect to the skier's description of the accident,] the patroller is instructed to write down what the patient tells them in that slot. They are told specifically not to elaborate, not to change anything, it's to be what the patient said happened.
 
 
 20
 Joint App. at 107, 121-23. Molyneaux also testified that the patient is ordinarily asked to sign the form, Joint App. at 114-15, and that the form in the case at bar was completed by Donna Johnson, who was working in the first aid room, and by John Kirchner, who was the patroller on the hill on which West was injured. Joint App. at 122.
 
 
 21
 After hearing counsel on the matter, the district court found that the report met the requirements of Fed.R.Evid. 803(6). West now asserts that the accident report was untrustworthy or otherwise inadmissible under the business records exception. Specifically, West maintains that some of the information in the report, including the notation "out of control" in the space left for the skier's description of the cause of the accident, was obtained from unknown sources. She also asserts that some of the questions were left blank, some of the information was incorrect, and some of the information consisted of lay opinion. West adds that the form is biased because it asks how the skier, but not Wintergreen, could have avoided the accident. Finally, West states that she was not asked to sign the form.
 
 
 22
 The determination of whether the proponent has met the foundation requirements of the business records exception and whether the circumstances indicate a lack of trustworthiness is left to the sound discretion of the trial judge. See Saks International, Inc. v. M/V "Export Champion", 817 F.2d 1011, 1013 (2d Cir.1987); Capital Marine Supply, Inc. v. M/V Roland Thomas, II, 719 F.2d 104, 106 (5th Cir.1983). This court concludes that the district court did not abuse its discretion in admitting the accident report. Molyneaux testified with respect to each of the foundation requirements, and the district court did not abuse its discretion in finding that an adequate foundation had been established and that the report was sufficiently trustworthy. West's complaints go to the weight to be given the report rather than to its admissibility, and she was afforded the opportunity to cross-examine both Molyneaux and Donna Johnson regarding the contents of the report and the manner in which it was prepared. Moreover, although West asserts that the "out of control" statement was from an unknown source, the quotation marks around the phrase and Wintergreen's practice of recording the skier's remarks without alteration indicate that West was the source of the statement. As such, the remark was an admission by a party opponent as defined in Fed.R.Evid. 801(d)(2)(A), and although West vehemently denied making the statement, this was a matter of credibility for the jury to resolve. In summary, the district court did not err in admitting the report pursuant to the business records exception.
 
 
 23
 For the foregoing reasons, the judgment below is
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 See Philip Morris, Inc. v. Emerson, 235 Va. 380, 368 S.E.2d 268 (1988); VEPCO v. Winesett, 225 Va. 459, 303 S.E.2d 868 (1983); Amusement Slides Corp. v. Lehman, 217 Va. 815, 232 S.E.2d 803 (1977); Budzinski v. Harris, 213 Va. 107, 189 S.E.2d 372 (1972)
 
 
 [2]
 Although West challenges the district court's admission of the report into evidence, this court finds her objection to be meritless. See infra at 6-11