JOYCE L. ARNDT, ADMINISTRATRIX OF THE ESTATE OF
EDWARD GEORGE STRIKE, DECEASED

v.

STEVEN MICHAEL RUSSILLO, A MINOR

Record No. 830138

April 25, 1986

Present: All the Justices

*Elmer Holst (Robert C. Hayes; Holst and Hartshorn*, on brief), for appellant.

*H. Harrison Braxton, Jr.; Susan A. Evans (John J. O'Donnell; John R. Stevens; Willis, Braxton, Ashby & Bass; Siciliano, Ellis, Sheridan & Dyer*, on brief), for appellee.

THOMAS, J., delivered the opinion of the Court.

Edward George Strike was killed while riding as a passenger in his own car. Strike had allowed his friend Steven Michael Russillo to drive. Strike's administratrix, Joyce L. Arndt, sued Russillo. Russillo defended on the grounds of contributory negligence or assumption of risk on Strike's part. The jury found in favor of defendant Russillo and the trial court entered judgment on the jury verdict. However, because jury verdicts in Virginia are general, we do not know whether the jury believed Strike was contributorially negligent or whether the jury believed he assumed the risk.

On appeal, Strike's administratrix contends, among other things, that the evidence was insufficient to support either of the theories of defense advanced by Russillo. We agree. Therefore, we will reverse the judgment of the trial court.

The accident occurred on August 27, 1981, about 11:00 p.m. At the time of the accident, Strike and Russillo, both teenagers, had been together for about three hours. Russillo met Strike at 8:00 p.m. at the end of Strike's soccer practice. Russillo was to spend the night at Strike's home. Both boys drove from the soccer field to Strike's house.

They stayed at Strike's house for a short while, then decided to go out. On the way out of the house, Strike went into the kitchen and took a bottle of brandy. He placed this in the back of his Ford Mustang automobile and the two drove down a dirt road from the house. Partway down the dirt road, Strike stopped the car, got out, and went into a trailer near the road. He retrieved a cooler containing ice, placed the cooler in the back seat of the Mustang, and put the brandy in the cooler. He then drove to the road in front of his house. He drove a short distance down that road,

again stopped the car, again got out, and this time retrieved a bottle of champagne, which he also put in the cooler. After picking up the champagne, Strike drove for another five to ten minutes, at which time Russillo remarked that he had never driven a Mustang before. Strike stopped and turned the car over to Russillo, who drove for "quite awhile." Strike did not resume driving until later that evening.

While the boys were in the car, the brandy and champagne bottles were opened. Russillo admitted that he had "some" brandy and two sips of champagne. Yet, Russillo did not testify to the effect of the drinks upon himself. Nor did he say whether he acted in such a manner as to arouse Strike's suspicion that Russillo was unable to drive properly. Neither did Russillo say whether he was driving at the time he took the drinks. Russillo remembered passing a bottle to Strike but said he did not see Strike take a drink.

It was dark when Strike resumed driving. When he got back behind the wheel he drove erratically. According to Russillo, Strike "put two of the wheels on somebody's lawn." Russillo does not remember how long Strike continued to drive from that point.

Russillo said they drove to a McDonald's Restaurant in Fredericksburg and stayed there ten minutes. While there, Strike bought a large soda. Russillo testified that he is not sure whether during that stop Strike drank anything from either of the two bottles.

The boys left the McDonald's and drove down River Road, the road on which the accident occurred. Strike turned into a dirt parking lot where the two "[w]ent to the bathroom." Russillo drove from the parking lot. The accident occurred thereafter. However, the record does not make clear the length of time between Russillo's taking the wheel and the occurrence of the accident. Russillo said he does not remember the accident.

Two eyewitnesses testified that forty minutes before the accident they saw a Mustang come down River Road, hit its brakes, skid, then speed off. The witnesses said that the same thing occurred about fifteen minutes later. The two testified that they thought the Mustang involved in the two instances of braking, skidding, and speeding was the same car involved in the accident. However, neither witness could identify the occupant, occupants, or driver of the car at the time of the two prior incidents.

Immediately before the fatal collision, the two witnesses heard an engine racing and tires squealing. They saw the Mustang pass them at a speed in excess of the posted 35 mile per hour limit.

The Mustang appeared to turn left in front of an on-coming car. Strike, who was on the passenger side of the Mustang, was killed, as was the driver of the other car.

At the scene of the accident, one of the eyewitnesses said Russillo looked dazed yet seemed to understand what was going on and gave intelligent responses. On cross-examination, this witness was asked to explain what he meant by saying Russillo seemed dazed. The witness responded: "He acted like somebody had been drinking." Russillo was never tested to determine his blood alcohol level.

The main issue is whether there was sufficient evidence to support the defenses of assumption of risk and contributory negligence. A collateral issue concerns the admissibility of evidence of the blood alcohol level of the decedent passenger. Our disposition of the first issue makes it unnecessary for us to address the collateral issue.

Russillo's theory of Strike's contributory negligence or assumption of risk is atypical. In one version of the usual case, the driver of the car contends that the injured passenger either *knew or should have known* that the driver had been drinking and that the driver's ability to drive was impaired, yet the passenger entered the car or continued to ride in the car despite an opportunity to get out. We have stated that such facts, if believed by a jury, could support the defense of contributory negligence. *See Dickenson* v. *Tabb*, 208 Va. 184, 156 S.E.2d 795 (1967). In another version of the usual case, the driver of the car contends that the injured passenger *knew* that the driver had been drinking and that the driver's ability to drive was impaired, yet the passenger with full knowledge of the circumstances voluntarily entered the car or continued to ride therein despite an opportunity to get out. Such facts have been found to support the defense of assumption of risk. *See Stoner* v. *Robertson, Adm'r*, 207 Va. 633, 151 S.E.2d 363 (1966); *Arrington, Adm'r* v. *Graham, Adm'r*, 203 Va. 310, 124 S.E.2d 199 (1962).

In *Arrington*, we discussed the difference between contributory negligence and assumption of risk; we wrote as follows:

> The doctrines of assumption of risk and contributory negligence are not identical. They are closely associated; but there is a distinction between them which has not always been observed in the decisions.

*"The essence of contributory negligence is carelessness; of assumption of risk, venturousness.* Thus an injured person may not have acted carelessly; in fact, may have exercised the utmost care, yet may have assumed, voluntarily, a known hazard. If so, he must accept the consequence." *Hunn* v. *Windsor Hotel Company*, 119 W. Va. 215, 193 S.E. 57, 58; *Tiller* v. *N. & W. Ry. Co.*, 190 Va. 605, 612, 58 S.E.2d 45.

It is now fairly well settled that where one voluntarily assumes the risk of injury from a known danger, he is debarred from a recovery in negligence cases. *Weston* v. *Hospital of St. Vincent of Paul*, 131 Va. 587, 593, 107 S.E. 785, 23 A.L.R. 907; 38 Am. Jur., Negligence, § 171, pages 845 and 846.

Various statements of the distinction between the doctrines of assumed risk and contributory negligence are found in the cases. Among them are the following:

"(A)ssumed risk implies intentional exposure to a known danger, which may or may not be true of contributory negligence; and that assumption of risk embraces a mental state of willingness, while contributory negligence is a matter of conduct." 65 C. J. S., Negligence, § 117, page 711; 38 Am. Jur., Negligence, § 172, page 847.

203 Va. at 314, 124 S.E.2d at 202. (Emphasis added). These principles find application here even though the facts do not fit the normal pattern.

In this appeal, there is no claim that Russillo was impaired by alcohol or that Strike knew or should have known that Russillo was driving while impaired.* Here, Strike's contributory negligence or assumption of the risk is said to arise from the episodes of braking, skidding, and speeding that immediately preceded the fatal crash. Though there is no evidence as to who was driving on the first two passes, the contention is that Strike either established

---

* On brief, Russillo said that the defenses of assumption of risk and contributory negligence "could well be summed up" in the testimony of one witness who described two instances of braking, skidding, and speeding away that preceded the fatal crash. Later in his brief, Russillo said that the testimony concerning the two instances of braking, skidding, and speeding away which preceded the accident was "the only evidence that the jury had concerning how the accident happened or what happened other than the physical findings of Trooper L. S. Terry." In light of the foregoing statements, we are of opinion that Strike's knowledge of Russillo's impairment is not the theory on which this case proceeded.

a pattern of reckless driving that was continued by Russillo or that Strike urged Russillo to drive recklessly. By this approach, Russillo contends that it makes no difference whether Strike was driving or riding as a passenger on the two passes that preceded the collision. However, in our opinion, it makes a great deal of difference as to who was driving.

In order to make out the defense of assumption of risk, Russillo would have to prove that Strike knew Russillo would drive recklessly, yet Strike voluntarily remained in the car even though he had an opportunity to get out. The clearest example of this defense would be proof that Russillo was driving on the first two episodes of braking, skidding, and speeding away. Then, after those two episodes of reckless driving, Russillo pulled into the dirt parking lot and the boys got out to relieve themselves. At that point, if Strike got back into the car as a passenger, with Russillo driving, and the accident occurred, then a jury could reasonably believe that Strike knew Russillo would again drive recklessly yet Strike voluntarily stayed in the car despite an opportunity to get out. However, the facts do not support this approach because, according to Russillo, Strike was driving up to the point that the boys pulled into the dirt parking lot. It was only afterwards that Russillo started driving and then the accident occurred.

If one assumes that Strike was driving during the first two episodes of reckless driving, then, from an assumption of risk standpoint, an entirely different result obtains. If Strike made the first two passes, then turned into the dirt parking lot and gave the keys to Russillo, upon what facts could the jury conclude that Strike knew Russillo would thereafter drive recklessly? There are no such facts in the record. Russillo suggests that if Strike made the first two passes, then Strike set up a course of conduct that Russillo would follow. But, as Strike's administratrix points out, no one knows what was said between the boys at any time, neither at the dirt parking lot nor in the car. Russillo did not testify, for example, that Strike gave him the keys and told him to "try it." Nor did Russillo testify that Strike egged him on. There is no way for the trier of fact to determine whether Strike gave the keys to Russillo because Strike knew that he himself was not driving safely and that Russillo would be the safer driver or whether Strike gave the keys to Russillo so that Russillo could have a chance at braking, skidding, and speeding away.

Assumption of risk was Russillo's defense. The burden was upon him to establish that Strike assumed the risk of Russillo's reckless driving. Russillo was involved in the events leading up to the accident and could have told the jury whether the boys were playing some sort of reckless game. Yet, Russillo was silent as to Strike's conduct leading up to the collision. All that the evidence establishes is that Strike brought alcoholic beverages along for the ride and that the boys probably drank some of it. Yet, as pointed out above, Russillo does not claim that he was impaired and that Strike knew or should have known that he was impaired. Given the approach taken by Russillo, he was required to present evidence from which the jury could determine that Strike assumed the risk that when Russillo got behind the wheel and drove from the parking lot he would do so recklessly. Such evidence cannot be found in this record. Russillo did not prove the defense of assumption of risk.

■ Nor did Russillo prove the defense of contributory negligence. To establish that defense, Russillo was required to prove that Strike knew or should have known that Russillo would drive recklessly when he drove from the parking lot. He had to establish that Strike carelessly remained in the car of a reckless driver even though he had an opportunity to get out. Again, as with the assumption of risk defense, it makes a great difference who was driving on the first two passes and what Strike was saying or doing while in the car. Without repeating the earlier discussion, suffice it to say that there is nothing in the record that provides the jury with evidence upon which it could conclude that Strike carelessly remained in the car though he knew or should have known that Russillo would drive recklessly. If Strike was driving the first two times, what is the proof that he knew or should have known that Russillo would drive in a similar reckless fashion? There is no such proof. Russillo did not provide evidence sufficient to establish Strike's contributory negligence.

■ The remaining issue in the case concerns the admissibility of evidence of Strike's blood alcohol level. That evidence was adduced by Russillo with regard to the issues of contributory negligence and assumption of risk. In analyzing this case, we have assumed that the evidence concerning Strike's blood alcohol level was admissible. Yet, as noted, Russillo's evidence on the defenses of contributory negligence and assumption of risk was insufficient. Consequently, on retrial following remand he will not be permit-

ted to reassert those defenses. Since the blood alcohol evidence was said to be relevant to assumption of risk or contributory negligence and since those defenses cannot be raised on retrial, it follows that the blood alcohol evidence will not be admissible because there will exist no issue to which it is relevant.

In light of all the foregoing, the judgment in favor of defendant will be reversed and the case remanded for further proceedings · consistent with this opinion.

*Reversed and remanded.*

COMPTON, J., dissenting.

I believe there was sufficient evidence to support the defenses of assumption of risk and contributory negligence and therefore would affirm the judgment below.

In reaching its conclusion, the majority summarily eliminates the so-called "collateral issue" of the admissibility of evidence of Strike's blood alcohol level. This evidence was crucial to the success of Russillo's defenses. In my view, that evidence was relevant, properly admitted in support of both defenses, and should not be dodged by the majority in its disposition of the case.

A state toxicologist called by Russillo testified that Strike had a blood alcohol content of 0.09 percent at the time of his death. While recognizing that the percentage is below the statutory presumption of intoxication, *see* Code § 18.2-269, the toxicologist stated "there would be definite decreases of mental . . . and physical capabilities at .09 percent." Thus, if Strike, realizing that Russillo was driving recklessly, saw the danger, appreciated it, and failed to give warning, if there was time to do so, he was contributorily negligent. "The fact that [Strike's] ability to use due care for [his] own safety may have been influenced by the voluntary consumption of alcohol will not excuse [him] from its consequences." *Major* v. *Hoppe*, 209 Va. 193, 200, 163 S.E.2d 164, 169 (1968). The testimony of the toxicologist tended to prove the degree of Strike's ability to assess the danger, if he observed it, and his ability to give timely warning, if there was an opportunity to do so, and was admissible for that purpose.

Likewise, regarding assumption of risk, the test result was relevant to show that Strike's consumption of alcohol affected his decision voluntarily to remain in the car and continue the joyride.

The jury was entitled to consider whether Strike's euphoria, fuelled by a mixture of brandy and champagne, made him more prone to be adventurous and to ride with Russillo when, if in full control of his ability to assess danger, he probably would have decided to stay out of the vehicle.

By ducking the blood-test issue, the majority is able to focus only on "who was driving." But this is merely one ingredient of the total circumstances surrounding the fatal crash, and should not be relied upon to the exclusion of other relevant facts.

Strike was responsible for setting the events in motion on the night of the accident. It was Strike who procured the bottle of brandy from his parents' "liquor cabinet." It was Strike who packed a cooler with ice and placed it in the back of the car. It was Strike who retrieved the champagne from its hiding place along the road near his home. And, of course, it was Strike who provided his own automobile for the joyride. Strike drove erratically when he resumed driving after having allowed Russillo to drive for "quite awhile." Said Russillo: "He put two of the wheels on somebody's lawn, and that hit me as unusual, because I had never known him to drive like that."

This evidence establishes that Strike initiated a course of conduct for Russillo to follow. That course began with the procurement of alcoholic beverages. It continued when Strike allowed Russillo to drive the vehicle. And, it assumed dangerous and later fatal proportions when the vehicle was put through at least two sequences of skidding and speeding. In sum, Strike became the victim of his own careless and venturesome conduct. Manifestly, jury issues were presented on both assumption of risk and contributory negligence. *Monk* v. *Hess*, 213 Va. 244, 191 S.E.2d 229 (1972); *Budzinski* v. *Harris*, 213 Va. 107, 189 S.E.2d 372 (1972).

There is another aspect of the majority's decision that troubles me. The proposition that the defendant was guilty of primary negligence which was a proximate cause of the collision has not been disputed on appeal. Yet, the case is being reversed because of lack of evidence to support the defenses and "for further proceedings." The only proceedings possible will be on the questions of primary negligence and proximate cause (issues already finally adjudicated) and damages. This is a rather odd result. If I agreed with the majority on the merits of the appeal, I would hold that de-

fendant's liability has been fixed and would remand the case for a trial on the issue of damages only.

COCHRAN AND POFF, JJ., join in dissent.