Present: Carrico, C.J., Compton, Lacy, Hassell, Keenan, and
Koontz, JJ., and Whiting, Senior Justice

ROBIN R. YOUNG, ET AL.

v. Record No. 961032    OPINION BY JUSTICE BARBARA MILANO KEENAN
                                        February 28, 1997
MARGARET A. LAMBERT,
ADMINISTRATRIX, ETC.

            FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
                    Richard C. Pattisall, Judge

        In this appeal, we consider whether the trial court erred in

instructing the jury on assumption of the risk.

        On October 25, 1991, Phillip M. Lambert, Lisa Jordan Jones,

Tammy Rutherford, and Christopher Reyes were killed when the

vehicle owned by Rutherford and operated by Lambert veered off a

road and collided with a tree. Robin R. and Robert R. Young,

administrators of Rutherford's estate (the plaintiff), brought

this wrongful death action against Margaret A. Lambert, the

administratrix of Phillip Lambert's estate (the defendant).

        The evidence at trial showed that Rutherford drove Jones to

Reyes' house in Roanoke shortly before 11:00 p.m. on October 24,

1991. At this location, Reyes and Lambert climbed into the back

seat of Rutherford's vehicle. Rutherford was driving the vehicle

when the group departed from Reyes' house.

        No one saw the four individuals alive after they left

Roanoke. The parties stipulated that the four remained together

from the time they were seen departing in Rutherford's vehicle

until the time of the accident.

        The collision occurred at approximately 2:40 a.m. on Route

311 in Craig County, about 20 to 25 miles from Roanoke. Route

311 is a road that winds through hilly terrain. Near the accident location, the northbound lane of Route 311 descends into a sharp left-hand curve. Photographs introduced at trial showed that the driver of Rutherford's vehicle failed to negotiate this curve, and that the vehicle proceeded off the shoulder of the roadway and struck a tree.

All four individuals died as a result of the impact. The police found Lambert's body in the driver's seat, Jones' body in the front passenger seat, Reyes' body in the left rear seat, and Rutherford's body in the right rear seat. Blood samples taken from the bodies revealed that Lambert had a blood-alcohol content (BAC) of .12, Rutherford had a BAC of .10, Jones had a BAC of .13, and Reyes had a BAC of .17.

Four witnesses testified that they did not observe Lambert consume any alcoholic beverages before he left Roanoke in Rutherford's vehicle. Two of these witnesses, Daniel Montgomery and Theresa Harmon, observed Lambert immediately before he entered Rutherford's vehicle and testified that he did not appear intoxicated at that time.

Theresa Harmon also testified that neither Lambert nor Reyes was carrying any liquor, or bag or container that might have contained alcohol, when they entered Rutherford's vehicle. Another witness, John Franklin, observed Rutherford and Jones each drink one beer in his apartment at about 10:00 p.m., but testified that neither appeared intoxicated when they left about

30 minutes later.

The parties stipulated that Rutherford successfully completed a high school course in driver's education in 1985. The course included a two-week unit on the hazards of driving under the influence of alcohol, and students were required to pass a written exam in this unit to receive their certificate.

Both parties presented testimony from forensic toxicologists regarding the effect that a BAC of .12 would have on a person's mental and physical condition. Dr. Dale Carpenter, a toxicologist employed by the Commonwealth's Division of Forensic Science, stated that it is not possible to identify any specific symptoms that a person having a certain BAC would exhibit. However, he testified that, in general, a person with Lambert's BAC would suffer impairment of judgment, inhibitions, and fine and gross motor skills. Dr. Carpenter further stated that all these factors could have affected Lambert's driving ability.

Dr. Robert Blanke, another toxicologist, testified that outward signs of intoxication "vary somewhat" in individuals, depending on their experience as drinkers, their age, and any disease they might have. He stated that, since he had not known Lambert, he could not state whether Lambert was able to conceal signs of intoxication to prevent notice by others.

Dr. Blanke stated, however, that a person of normal intelligence and experience would recognize an individual with a BAC of .12 as being drunk. Dr. Blanke further testified that the

probability of such an individual appearing "obviously drunk" to an observer would increase if the observer had seen that individual consume alcohol, or if the observer had completed a driver education course.

At the close of the defendant's evidence, the plaintiff moved to strike the defendant's affirmative defenses of contributory negligence and assumption of the risk. The trial court struck the contributory negligence defense, but instructed the jury on assumption of the risk.

The jury returned a verdict in favor of the defendant. The plaintiff moved to set aside the verdict on the ground that there was no evidence from which the jury could have concluded that Rutherford assumed the risk of riding with an intoxicated driver. The trial court denied the plaintiff's motion and entered final judgment in accordance with the jury verdict.

On appeal, the plaintiff contends that the defendant failed to introduce any evidence showing that Rutherford knew that Lambert's ability to drive was likely to be impaired, or that she appreciated the nature and extent of the risk in remaining in the vehicle while Lambert was driving. The plaintiff asserts that the evidence showed nothing more than Lambert's BAC, which provided an insufficient basis for an assumption of the risk instruction.

In response, the defendant argues that the evidence was sufficient to support a jury instruction on assumption of the

risk.  The defendant notes that Lambert was "sober" and "empty handed" at 11:00 p.m. when he joined Rutherford, and that Lambert and Rutherford remained in each other's presence for the rest of the evening.  Thus, the defendant contends, Rutherford had to be aware that Lambert was drinking heavily over a short period of time, and that his ability to drive was likely to be impaired. We disagree with the defendant.

Assumption of the risk is a defense that is based primarily on a subjective standard of "what the particular plaintiff in fact sees, knows, understands and appreciates."  Amusement Slides v. Lehmann, 217 Va. 815, 818-19, 232 S.E.2d 803, 805 (1977) (citation omitted).  The essence of this defense is venturousness, which requires proof that the plaintiff voluntarily incurred the risk and fully appreciated its nature. Id. at 819, 232 S.E.2d at 805; Buffalo Shook Co. v. Barksdale, 206 Va. 45, 48, 141 S.E.2d 738, 741 (1965).  Thus, assumption of the risk requires intentional exposure to a known danger.  Arndt v. Russillo, 231 Va. 328, 332, 343 S.E.2d 84, 87 (1986).  The burden of proving assumption of the risk rests with the defendant.  Id. at 334, 343 S.E.2d at 88.

Generally, the issue whether a plaintiff has assumed a risk is a question of fact to be decided by the jury.  Budzinski v. Harris, 213 Va. 107, 111, 189 S.E.2d 372, 376 (1972).  However, before the issue of assumption of the risk may be submitted to the jury, there must be sufficient evidence that the plaintiff

had knowledge of the existing danger and willingly incurred its risk. See Philip Morris, Inc. v. Emerson, 235 Va. 380, 403, 368 S.E.2d 268, 280 (1988). When the evidence would require the jury to speculate to reach a verdict for the defendant on this ground, an assumption of the risk instruction will not be granted. See Tomlin v. Worley, 206 Va. 344, 351, 143 S.E.2d 866, 872 (1965).

An individual has assumed the risk of riding with an intoxicated driver when she (1) voluntarily elects to ride with a driver whom she knows has consumed alcohol to such an extent that the driver's ability to drive is impaired or is likely to be impaired, and (2) fully appreciates the nature and extent of the risk involved in riding with the driver. Budzinski, 213 Va. at 110, 189 S.E.2d at 375. Applying this standard, we conclude that as a matter of law, the evidence fails to show that Rutherford assumed the risk of riding with Lambert in his intoxicated condition.

Under the evidence, the jury was required to speculate in order to find that Rutherford knew Lambert had consumed alcohol to such an extent that his ability to drive was likely to be impaired. Although Rutherford and Lambert remained in each other's presence between 11:00 p.m. and the time of the accident, there is no evidence that Rutherford saw Lambert drinking any alcoholic beverages, or observed that his speech, muscular movement, behavior, or driving conduct were affected by the consumption of alcohol. In order to find that Rutherford

voluntarily assumed a known risk, the jury was required to speculate that Rutherford was awake while Lambert was drinking, that she was able to observe all his actions, that her attention was not diverted during the time that he consumed the alcohol, and that she did not attempt to get out of the car or to dissuade him from driving.

The fact that Lambert had a BAC of .12 shows only that he had consumed a certain amount of alcohol. This fact does not show subjective knowledge by Rutherford that Lambert had consumed any amount of alcohol, or that his driving ability was likely to be impaired. Further, the record contains no evidence concerning the manner and degree to which Lambert manifested the effects of alcohol consumption. Although Dr. Blanke testified that a person of normal experience and intelligence would recognize an individual having a BAC of .12 as being drunk, he had no knowledge, and there was no evidence, of what Rutherford saw, knew, understood, or appreciated. See Amusement Slides, 217 Va. at 818–19, 232 S.E.2d at 805.

The fact that Rutherford had completed a course in driver's education also does not constitute evidence of her subjective knowledge of Lambert's condition that evening. As stated above, the record does not contain any evidence regarding Lambert's outward manifestations of the effects of alcohol consumption, or regarding Rutherford's observations and understanding of Lambert's condition. Absent such evidence that Rutherford knew

Lambert's ability to drive was likely to be impaired due to his consumption of alcohol, the record is insufficient to support a jury instruction on assumption of the risk.

For these reasons, we will reverse the trial court's judgment and remand the case for a new trial.

<u>Reversed and remanded.</u>