PRESENT: All the Justices

DONNA P. THURMOND

v.  Record No. 020116   OPINION BY JUSTICE BARBARA MILANO KEENAN
                                      January 10, 2003
PRINCE WILLIAM PROFESSIONAL
BASEBALL CLUB, INC., ET AL.

           FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                    Herman A. Whisenant, Jr., Judge


     In this appeal, we consider whether the trial court erred

in awarding summary judgment to the defendants in a negligence

action on the ground that the plaintiff, a spectator at a "minor

league" baseball game, assumed the risk of being struck by a

batted "foul" ball.

     Because this case was decided by summary judgment, we will

state the facts, and the inferences from the facts, that are

most favorable to the nonmoving party, Donna P. Thurmond.

However, we will not employ inferences that are forced,

strained, or contrary to reason.  Dudas v. Glenwood Golf Club,

Inc., 261 Va. 133, 136, 540 S.E.2d 129, 130-31 (2001); Lindsay

v. McEnearney Assocs., 260 Va. 48, 50, 531 S.E.2d 573, 574

(2000).

     In August 1997, Thurmond attended a night baseball game

conducted by the Prince William Professional Baseball Club,

Inc., doing business as the Prince William Cannons (the

Cannons), at the G. Richard Pfitzner Stadium (the stadium) in

Prince William County.  The Cannons are a "Class A" minor league professional baseball team affiliated with the St. Louis Cardinals, L.P. (the Cardinals), of "Major League Baseball."[1] The Cardinals contracted with the Cannons to provide the Cannons with players and coaches as part of the Cardinals' player development program.

In the stadium, spectators were warned of the risk of being struck by objects batted or thrown from the field.  Warning signs, measuring three feet by three feet, were posted at entrances to the seating areas.  These signs stated: "Be Alert! Objects batted or thrown into the stands may be dangerous."  All persons entering the stadium walked past one of these entrances, regardless of the location of their seats.

In addition, the back of each admission ticket contained a printed warning that stated, in relevant part:

> The holder of this ticket assumes all risk and danger incidental to the game of baseball . . . including specifically (but not exclusively) the danger of being injured by thrown bats, thrown or batted balls, . . . and agrees that the participating clubs or their officials, agents and players are not liable for injury related from such causes.

---

[1] We recognize that there is no legal entity known as "Major League Baseball."  However, this term is ordinarily used to refer to the joint operations of the American League of Professional Baseball Clubs, Inc., and the National League of Professional Baseball Clubs, Inc.  Minnesota Twins P'ship v. State, 592 N.W.2d 847, 849 n.1 (Minn. 1999.)

Twenty to thirty seats were reserved for each game in the screened area behind home plate for those spectators who requested to be reseated because they were not comfortable sitting in the unscreened areas of the stadium.

Thurmond sat with her family and friends "high in the bleachers" on the third base side of the stadium. This was Thurmond's first visit to the stadium, and she did not know that she could have requested a seat in the screened area behind home plate. She also did not read the warning printed on the back of the admission ticket because she never had possession of her ticket, which her friends had given to her husband. However, Thurmond remained alert at all times during the game, watching the hitters and batted baseballs.

During the eighth inning, a "line drive foul" ball was batted toward Thurmond. Although Thurmond saw the baseball approaching in her direction, the ball was moving too rapidly to allow her to take any evasive action. The ball struck Thurmond directly on the right side of her face, and she sustained various injuries, including fractures of her facial bones, damage to her right eye socket, and extensive nerve damage.

Thurmond filed a motion for judgment in the trial court against the Cardinals and the Cannons. She alleged that she was injured as a result of the defendants' negligence in failing to provide adequate warnings at the stadium and to operate and

maintain the stadium in a safe condition to prevent injuries to invitees. In response, the defendants filed a motion for summary judgment on various grounds, including the argument that Thurmond assumed the risk of injury as a matter of law when she chose to sit in an unscreened area of the stadium.[2]

In opposing the defendants' summary judgment motion, Thurmond asserted that the issue whether she voluntarily exposed herself to a known risk could not be resolved without her testimony at a trial. She also argued that a decision on summary judgment was inappropriate because there remained several factual disputes concerning the adequacy of the stadium facility and the warnings provided by the defendants.

Thurmond further asserted that the stadium's field dimensions did not meet the minimum standards specified in the Major League Rules (the rules), which the Cannons' organization was bound to follow by their player development contract with the Cardinals. Thurmond contended that the rules required a minimum distance of 60 feet between home plate and the "backstop," and between the third base line and the spectator stands, and that the stadium did not comply with these

---

[2] There were other named defendants, who were dismissed without prejudice from the case by order of nonsuit before the trial court's ruling on the defendants' summary judgment motion.

4

requirements.  The distance at the stadium between home plate and the "backstop" was 53 feet, eight inches.[3]

In her designation of expert witnesses, Thurmond identified David H. Fried, "a sports and recreation safety consultant." According to Thurmond, Fried was expected to testify that the defendants "knew, or should have known, that the playing area was too close to the grandstand and spectators."  Thurmond also stated that Fried would testify that "had the playing field conformed to minor league baseball standards in regard to its location within the stadium . . . or had [Thurmond] been properly or sufficiently warned . . . it is probable that she would not have sustained injury as she did."

In response to Thurmond's assertions, the defendants argued, among other things, that the rules concerning playing field dimensions and lighting conditions were promulgated to ensure uniformity of conditions for the benefit of the players, not for the safety of the spectators seated in the stands.  The defendants also asserted that the rules merely recommended, rather than required, a distance of 60 feet between the foul lines and the stands, and between home plate and the "backstop."

---

[3] Although the record does not show the distance between the third base line and the spectator stands, Thurmond's counsel agreed during oral argument in this case that this distance was about "five to six feet" less than the 60-foot requirement.

5

The trial court awarded summary judgment in favor of the defendants holding that, as a matter of law, Thurmond assumed the risk of being struck and injured by a batted "foul" ball. Thurmond appeals.

Thurmond argues that the trial court erred in granting the defendants' motion for summary judgment because there remained disputed issues of fact that were material to the issue of the defendants' negligence. She contends that those disputed issues included the adequacy of the stadium lighting, the field dimensions, and the need for warnings that were not provided by the defendants. Thurmond asserts that resolution of these disputed factual issues was required before the trial court could determine whether she assumed the risk of injury under the subjective test articulated by this Court.

In response, the defendants argue that, as a matter of law, Thurmond assumed the risk of being injured by a batted "foul" ball. The defendants argue that the stadium lighting, field dimensions, and the content of the warnings Thurmond received did not present genuine issues of fact because the risk of injury from a batted "foul" ball was necessarily apparent to Thurmond as a matter of common sense.

In deciding this issue, we first state the general principles that govern our inquiry. In this Commonwealth, a person's voluntary assumption of the risk of injury from a known

6

danger operates as a complete bar to recovery for a defendant's alleged negligence in causing that injury. Arndt v. Russillo, 231 Va. 328, 332, 343 S.E.2d 84, 86 (1986); Landes v. Arehart, 212 Va. 200, 202-03, 183 S.E.2d 127, 129 (1971). Application of the defense of assumption of risk requires use of a subjective standard, which addresses whether a particular plaintiff fully understood the nature and extent of a known danger and voluntarily exposed herself to that danger. Hoar v. Great E. Resort Mgmt., Inc., 256 Va. 374, 390, 506 S.E.2d 777, 787 (1998); Young v. Lambert, 253 Va. 237, 241, 482 S.E.2d 823, 826 (1997); Artrip v. E.E. Berry Equip. Co., 240 Va. 354, 358, 397 S.E.2d 821, 824 (1990). Thus, the defense of assumption of risk ordinarily presents a jury question, unless reasonable minds could not differ on the issue. Young, 253 Va. at 241, 482 S.E.2d at 826; Waters v. Safeway Stores, Inc., 246 Va. 269, 271, 435 S.E.2d 380, 381 (1993); Holland v. Shively, 243 Va. 308, 311, 415 S.E.2d 222, 224 (1992); see Hoar, 256 Va. at 389-90, 506 S.E.2d at 787.

We also emphasize that summary judgment is a procedure that may be employed only when there are no material facts genuinely in dispute. Rule 3:18; Brown v. Sparks, 262 Va. 567, 571, 554 S.E.2d 449, 451 (2001); Majorana v. Crown Cent. Petroleum Corp., 260 Va. 521, 525, 539 S.E.2d 426, 428 (2000); Slone v. Gen. Motors Corp., 249 Va. 520, 522, 457 S.E.2d 51, 52 (1995).

7

Therefore, as part of our review of the trial court's conclusion that Thurmond assumed the risk of injury as a matter of law, we must determine whether there were any disputed facts material to the resolution of that issue.

We hold that the arguments advanced by Thurmond, including the adequacy of warnings provided by the defendants, and questions involving the lighting conditions and field dimensions at the stadium, do not present issues of fact that are material to the conclusion of law that we reach here. As explained in Brisson v. Minneapolis Baseball & Athletic Ass'n, 240 N.W. 903 (Minn. 1932):

> No one of ordinary intelligence could see many innings of the ordinary league game without coming to a full realization that batters cannot, and do not, control the direction of the ball which they strike and that foul tips or liners may go in an entirely unexpected direction. [One] could not hear the bat strike the ball many times without realizing that the ball was a hard object. Even the sound of the contact of the ball with the gloves or mitts of the players would soon apprize him of that.

Id. at 904. The great weight of authority from other jurisdictions reflects the general rule that as a matter of law, a spectator assumes the normal risks of watching a baseball game, which includes the danger of being hit by a ball batted into an unscreened spectator area.[4] See, e.g., Quinn v.

---

[4] In many of these jurisdictions, the general rule has been articulated further to impose on a stadium owner or operator a "limited duty" to screen the area behind home plate and to offer

8

Recreation Park Ass'n, 46 P.2d 144, 146-47 (Cal. 1935); Hunt v. Thomasville Baseball Co., 56 S.E.2d 828, 829 (Ga. Ct. App. 1949); Shaw v. Boston Am. League Baseball Co., 90 N.E.2d 840, 842 (Mass. 1950); Anderson v. Kansas City Baseball Club, 231 S.W.2d 170, 173 (Mo. 1950); Hobby v. City of Durham, 569 S.E.2d 1, 2 (N.C. Ct. App. 2002); Simpson v. City of Muskogee, 879 P.2d 1269, 1270-71 (Okla. Ct. App. 1994); McNeil v. Fort Worth Baseball Club, 268 S.W.2d 244, 246-47 (Tex. Civ. App. 1954); Lawson v. Salt Lake Trappers, Inc., 901 P.2d 1013, 1016 (Utah 1995).

We adopt this general rule for application in Virginia, in the context of the subjective focus of this Commonwealth's assumption of risk doctrine. As stated above, this doctrine requires us to consider whether a particular plaintiff fully understood the nature and extent of a known danger and voluntarily exposed herself to that danger.[5] Hoar, 256 Va. at 390, 506 S.E.2d at 787; Young, 253 Va. at 241, 482 S.E.2d at

_____

a sufficient amount of seating for spectators who reasonably may be anticipated to request protected seats in the course of an ordinary game. See, e.g., Benejam v. Detroit Tigers, Inc., 635 N.W.2d 219, 222-23 (Mich. Ct. App. 2001); Akins v. Glens Falls City Sch. Dist., 424 N.E.2d 531, 533-34 (N.Y. 1981); Lawson v. Salt Lake Trappers, Inc., 901 P.2d 1013, 1015 (Utah 1995).

[5] In Nelson v. Great Eastern Resort Management, Inc., 265 Va. ___, ___, ___ S.E.2d ___, ___ (2003) (this day decided), we again emphasized the subjective focus of the doctrine of assumption of the risk, and we rejected the doctrine of "inherent risk" and its apparent reliance on an objective

9

826; Artrip, 240 Va. at 358, 397 S.E.2d at 824.  Thus, we hold that when a particular adult spectator of ordinary intelligence is familiar with the game of baseball, that spectator assumes the normal risks of watching a baseball game, including the danger of being hit by a ball batted into an unscreened seating area of a stadium.

We apply this rule in the context of Thurmond's pleadings and concessions in this case.  We conclude that reasonable persons could not disagree that Thurmond, who conceded that she remained alert throughout the game and observed hitters and batted balls for more than seven innings before being injured, was familiar with the game of baseball, knew the risk of being injured by a batted ball, and voluntarily exposed herself to that risk by remaining seated in an unscreened area.

We disagree with Thurmond's argument that this general rule should not apply to her case because the allegedly deficient lighting conditions and playing field dimensions were not normal hazards, and that she was entitled to prove at a trial that she did not knowingly assume these risks.  First, the field lighting conditions are not material to a resolution of this case because Thurmond conceded in the trial court that she saw the baseball approaching in her direction before it struck her.

standard in determining a plaintiff's knowledge and acceptance of a particular risk.

10

Second, the variance in field dimensions was not material to the hazards created by the uncertain course of every batted ball's trajectory, a hitter's lack of control over each ball's direction of travel, or the force with which any batted ball can be hit into an unscreened spectator area.  Moreover, Thurmond was not seated in the six-foot area of the spectator stands that she contends should have been part of the playing field.  Thus, we hold that Thurmond knew and voluntarily exposed herself to the hazards of the game by remaining in the unscreened area after watching seven innings of play from that unprotected location.

In addition, we observe that Thurmond's argument regarding the field dimensions, and their materiality to the issues of the defendants' negligence and whether she assumed the risk of injury, rests on certain logical fallacies.  First, her argument requires speculation that compliance with field specifications would have resulted in her seat and row being located farther from the field, rather than being located in the same place with no seating provided in the six-foot area of the stands next to the playing field.

The second logical fallacy in Thurmond's argument regarding the field dimensions is evidenced by her counsel's statements during oral argument in this appeal that Thurmond was seated "high up in the stands," and that the playing field was "closer

11

to her by some five to six feet than it should have been."
Given these conceded facts, the slightly smaller field
dimensions did not expose her to a different risk of injury
because she was seated "high up in the stands," far behind the
additional six-foot area allegedly required by the relevant
field specifications.

Accordingly, we hold that the trial court did not err in
awarding summary judgment to the defendants, because Thurmond's
assumption of the risk was a complete bar to her recovery in
this negligence action.  We will affirm the trial court's
judgment.

<u>Affirmed.</u>

12