**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 12-1414

JERRELL R. JOHNSON, Administrator of the Estate of Kirill
Denyakin, Deceased,

Plaintiff - Appellant,

v.

STEPHEN D. RANKIN, Individually and in his Official Capacity
as a Police Officer for the City of Portsmouth, Virginia,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern
District of Virginia, at Norfolk. Rebecca Beach Smith, Chief
United States District Judge. (2:11-cv-00415-RBS-TEM)

Argued: September 18, 2013          Decided: December 2, 2013

Before WILKINSON, MOTZ, and FLOYD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED**: Fletcher C. Alford, DENTONS US LLP, San Francisco,
California, for Appellant. Richard J. Cromwell, MCGUIREWOODS
LLP, Norfolk, Virginia, for Appellee. **ON BRIEF**: James R.
Reilly, GORDON & REES, LLP, San Francisco, California, for
Appellant. Kenneth W. Abrams, MCGUIREWOODS LLP, Richmond,
Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Jerrell R. Johnson, the administrator of Kirill Denyakin's estate, brought this action against City of Portsmouth Police Officer Stephen D. Rankin, alleging that Rankin was liable for excessive force in violation of the Fourth Amendment under 42 U.S.C. § 1983 and battery and gross negligence under Virginia law. A jury ruled in favor of Rankin on all counts. Johnson now appeals, arguing that the district court erred in making certain evidentiary determinations. For the reasons that follow, we affirm.

I.

On the night of April 23, 2011, Rankin received a "Priority One" emergency call from City of Portsmouth, Virginia, Dispatch reporting a "burglary in progress" at an apartment building. Priority One calls are reserved for situations in which someone is in physical danger. Rankin testified that the dispatcher told him that a man was trying to break down a door. According to Rankin, when he arrived, he saw a man matching the suspect's description violently banging on a glass door with both hands over his head, apparently trying to gain entry into the building.

Rankin testified that he positioned himself about thirty-five feet away from the suspect—Denyakin, an immigrant from

2

Kazakhstan. Rankin stated that he drew his weapon, identified himself as a police officer, and repeatedly told Denyakin to stop, show his hands, and get down on the ground. According to Rankin, Denyakin stopped banging on the door when Rankin issued his commands. Denyakin then lowered his hands to his sides and shoved his right hand in his pants, a place where Rankin knew that suspects can hide weapons. Rankin testified that Denyakin appeared to be "digging for an object." At this time, Rankin called "clear the air" into his radio, which is a signal that lets other officers know that an emergency situation is unfolding. Rankin testified that Denyakin then charged at him and did not stop when Rankin ordered him to do so.

Rankin further testified that, although he did not see a weapon, Denyakin's behavior led him to believe that he was in serious physical danger. He fired his weapon eleven times over the course of about three seconds, and each shot struck Denyakin, killing him. Rankin may have fired the last one or two shots as Denyakin fell to the ground. Although Rankin testified that Denyakin had his right hand inside his pants when he started the charge, he is unsure when Denyakin removed his hand because his focus shifted to Denyakin's "center mass" when he began charging. A search later revealed that Denyakin was not carrying a weapon.

Johnson brought this action against Rankin, both individually and in his official capacity, alleging a claim of excessive force in violation of the Fourth Amendment under § 1983 and state law claims for battery and gross negligence.[1] A jury trial commenced on February 28, 2012. This appeal concerns three evidentiary determinations that the district court made. First, Johnson challenges the district court's decision to allow "prior bad act" evidence regarding Denyakin's alcoholism and his behavior during an earlier encounter with police. At trial, Johnson contended that Denyakin could not have charged at Rankin due to his high blood alcohol content (BAC)—0.28%—at the time of the incident. In support of this theory, Johnson presented lay witness testimony about Denyakin's heavy drinking and inappropriate behavior the day of the shooting. He also offered the expert testimony of toxicologist Alphonse Polkis, who believed that Denyakin was too drunk to charge at Rankin. In response, Rankin presented lay witness testimony that Denyakin appeared coherent and coordinated before his encounter with Rankin and that he smoked a cigarette, walked along the street, and went up and down steps. Rankin also offered expert

---

[1] Johnson also alleged cruel and unusual punishment in violation of the Eighth Amendment under § 1983. Johnson consented to the dismissal of this count on August 30, 2011, and it is not at issue on appeal.

4

testimony that Denyakin was a chronic alcoholic who had developed a tolerance for alcohol and could charge at Rankin despite his high BAC. Finally, Rankin presented lay and expert testimony regarding a confrontation Denyakin had with police on February 21, 2011, when he had a BAC of 0.22%. During that encounter, Denyakin walked without stumbling, and a police officer told him that he could shoot him if he failed to show his hands. The testimony also revealed that Denyakin threatened to beat his girlfriend, punched her apartment window, and drew a bloody symbol on her door.

Second, Johnson challenges the district court's decision to exclude two of Rankin's Facebook postings from the liability phase of trial. Johnson sought to introduce the postings as evidence of Rankin's motivation for shooting Denyakin. One posting included a photograph of an ethnic lynching with the caption, "LOVE IS . . . Doing whatever is necessary." Another posting showed guns and gun-cleaning equipment with the caption "Rankin's box of vengeance" and the comment that it would be better if Rankin were "dirtying" the guns. The district court concluded that the postings were "inflammatory" and decided to bifurcate the issue of punitive damages from the rest of the trial, allowing the Facebook evidence only at the punitive damages stage.

5

Third, Johnson contests the district court's decision to exclude an autopsy photograph. At trial, Johnson called Virginia Assistant Chief Medical Examiner Elizabeth Kinnison—the doctor who performed the autopsy on Denyakin—as an expert witness. Kinnison testified regarding a gunshot wound on Denyakin's right hand. According to Kinnison, "[t]he way that the edges of [the wound] tore made me favor that [the bullet] went from the palm of his hand to the back of his hand, but I'm not absolutely certain that it couldn't have gone from back to front." Johnson sought to admit a photograph of the wound, claiming that it showed that Denyakin's hand could not have been in his pants at the time of the shooting because people typically insert their hands into their pants with the palm facing the body. The court declined to admit the photograph following this exchange with Kinnison:

> THE COURT: The issue was if this would help her opinion or help her be more sure.
> . . .
>
> THE COURT: Does that photograph, Dr. Kinnison, assist you in making any different conclusion?
> THE WITNESS: No, ma'am.

The court held that the photograph's "prejudicial value clearly outweighs any probative value on [Kinnison's] testimony."

On March 1, 2012, the jury returned a verdict in favor of Rankin on all counts. Johnson filed this timely appeal,

6

challenging the aforesaid evidentiary decisions. We have jurisdiction pursuant to 28 U.S.C. § 1291.


II.

Johnson contends that the district court erred in admitting prior bad act evidence that "portrayed Denyakin as . . . an alcoholic, an abuser of women, and that he had previously been arrested by a different police officer."[2] Most of this evidence stemmed from Denyakin's February 21, 2011, encounter with police, during which a police officer informed him that the

---

[2] Johnson also challenges evidence "portray[ing] Denyakin as a 'foreigner' and an illegal alien." The evidence showed that Denyakin was from Kazakhstan and went by the nickname "KGB," which were simply facts of the case that Johnson's own witnesses discussed. Rankin presented minimal evidence of Denyakin's immigration status through Denyakin's brother's deposition. When Rankin asked Denyakin's brother whether Denyakin had been "arrested at any time before" the day of his death, his brother answered "yes" and explained that "[t]he arrest was connected with immigration policy." The deposition does not include any further discussion of this arrest. This isolated comment hardly "paint[s] Denyakin as a dangerous person of bad character" as Johnson contends. Furthermore, this evidence did not pervade the trial to the extent that evidence of immigration status did in the cases Johnson cited in the memorandum he references in his reply brief. See, e.g., TXI Transp. Co. v. Hughes, 306 S.W.3d 230, 245 (Tex. 2010) (noting that the plaintiff "sought to hedge his theory by calling attention to [the defendant's] illegal immigration status whenever he could"); Maldonado v. Allstate Ins. Co., 789 So. 2d 464, 466, 470 (Fla. Ct. App. 2001) (deciding that the prejudicial effect of the defendant's immigration status outweighed its probative value when that status was "a central feature" at trial). We therefore do not further consider this portion of Johnson's argument.

7

police could shoot him if he did not comply with their instructions. Although he was highly intoxicated, Denyakin was able to walk without stumbling and behave violently toward his girlfriend.

We review the district court's rulings regarding the admissibility of evidence for abuse of discretion. United States v. Cole, 631 F.3d 146, 153 (4th Cir. 2011). A district court abuses its discretion when it acts arbitrarily, see id., or applies "erroneous legal principles to the case," United States v. Mason, 52 F.3d 1286, 1290 (4th Cir. 1995). This Court has established a four-part test for determining the admissibility of prior act evidence under Federal Rule of Evidence 404(b):

> (1) The evidence must be relevant to an issue, such as an element of an offense, and must not be offered to establish the general character of the defendant. In this regard, the more similar the prior act is (in terms of physical similarity or mental state) to the act being proved, the more relevant it becomes. (2) The act must be necessary in the sense that it is probative of an essential claim or an element of the offense. (3) The evidence must be reliable. And (4) the evidence's probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process.

Cole, 631 F.3d at 154 (quoting United States v. Johnson, 617 F.3d 286, 296-97 (4th Cir. 2010)).

With respect to the first step of this inquiry, Rankin contends that the evidence is relevant for two reasons that are

8

unrelated to Denyakin's general character. First, the evidence demonstrates that Denyakin was capable of charging at Rankin while extremely intoxicated, which Johnson disputed. Second, the evidence shows that Denyakin was on notice that he would be shot if he did not comply with Rankin's instructions, which is relevant to Rankin's assumption of the risk and contributory negligence defenses.

Johnson questions both of Rankin's arguments in favor of the relevance of this evidence. First, Johnson argues that the evidence merely shows Denyakin's past experience with alcohol, which is unrelated to the true issue in this case: Denyakin's ability to attack a police officer. We disagree. The events of February 21, 2011, demonstrate that Denyakin could walk, respond lucidly to a police officer, and behave violently while drunk. The testimony regarding Denyakin's alcoholism further illustrates his heightened ability to act while intoxicated. Specifically, the testimony shows that Denyakin had developed a tolerance to alcohol that allowed him to function with a high BAC. We therefore find that the evidence in question speaks to Denyakin's ability to function while intoxicated, which bears on whether Denyakin could have charged at Rankin while drunk.

Second, Johnson contends that the contributory negligence defense involves an objective inquiry, rendering irrelevant the question of whether Denyakin was on notice that he could be

9

shot. However, pursuant to Virginia law, contributory negligence has a subjective component: it "requires sufficient evidence of knowledge on the part of [the] plaintiff of the danger to be guarded against." Philip Morris, Inc. v. Emerson, 368 S.E.2d 268, 280 (Va. 1988); see also Arndt v. Russillo, 343 S.E.2d 84, 88 (Va. 1986) ("To establish th[e] [contributory negligence] defense, [the defendant] was required to prove that [the plaintiff] knew or should have known that [the plaintiff] would drive recklessly . . . ."). Furthermore, Virginia's assumption of the risk defense requires the defendant to prove that the plaintiff "fully appreciated" "the nature and extent of the risk" and "voluntarily incurred" that risk. Monk v. Hess, 191 S.E.2d 229, 230 (Va. 1972) (quoting Leslie v. Nitz, 184 S.E.2d 755, 757 (Va. 1971)) (internal quotation marks omitted). This certainly is a subjective inquiry. Accordingly, the district court did not err in determining that the evidence regarding Denyakin's alcohol abuse and actions on February 21, 2011, was relevant.

The evidence in question also survives the second step of the above test because "it is probative of an essential claim." Cole, 631 F.3d at 154. Each of Johnson's claims turns on whether Rankin was justified in using lethal force, and evidence that illustrates Denyakin's ability to charge while intoxicated— such as the February 21, 2011, incident and Denyakin's

10

alcoholism—speaks to whether Rankin was so justified.  The third step of the above test—the reliability of the evidence—is not at issue in this appeal.

Regarding the fourth step, the district court engaged in a limited inquiry regarding whether the prior act evidence's probative value outweighed its prejudicial effect under Federal Rule of Evidence 403.  After the district court overruled Johnson's objection that the evidence constituted hearsay, the district court noted that the evidence was "highly relevant to contributory negligence, because . . . a person has for a second time knowingly put themselves in the same path of danger."  The court also gave a cautionary instruction to combat any prejudice.  In this way, the district court implicitly recognized that the evidence's probative value outweighed its prejudicial effect.  This Court has explained that, "[a]s long as the record as a whole indicates appropriate judicial weighing, we will not reverse for failure to recite mechanically the appropriate balancing test."  United States v. Lewis, 780 F.2d 1140, 1142 (4th Cir. 1986).  We therefore determine that the district court did not abuse its discretion in concluding that the evidence in question satisfies Rule 403.  Because the evidence regarding Denyakin's alcoholism and prior encounter with police complies with this Court's four-part test, we hold

11

that the district court did not err in admitting this evidence pursuant to Rule 404(b).

## III.

Next, Johnson contends that the district court erred in excluding Rankin's Facebook postings from the liability phase of the trial. At the time of trial, Johnson contended that the postings were "particularly relevant to [Rankin's] motive, intent, and state of mind as it relates to [Johnson's] punitive damages claims under § 1983 and the state tort claims" and "go towards the issue of reckless or callousness under the Supreme Court's test [for punitive damages in Smith v. Wade, 461 U.S. 30, 56 (1983)]." Johnson now contends that the Facebook postings speak to Rankin's credibility, implying that they show Rankin was motivated to intentionally engage in ethnic violence—such as shooting an immigrant—and lie about why he did it. Because Johnson failed to preserve his objection on credibility grounds, we review the district court's ruling only for plain error. See Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 174 (1988) (to preserve an objection to the exclusion of evidence, its proponent must "mak[e] known . . . the party's objection . . . and the grounds therefor"). To reverse, there must be (1) an error, (2) which is plain, (3) which affects substantial rights, and (4) which seriously affects "the fairness,

12

integrity, or public reputation of judicial proceedings." United States v. Olano, 507 U.S. 725, 732-37 (1993).

The trial court excluded the Facebook postings on the grounds that they were (1) "inflammatory" and (2) irrelevant due to the standard that the Supreme Court set forth in Graham v. O'Connor, 490 U.S. 386 (1989). In Graham, the Supreme Court held that the plaintiff in a § 1983 excessive force case does not bear the burden of proving that the officer acted with "subjective motivations" that were "malicious and sadistic." 490 U.S. at 397. The Supreme Court also explained, however, that evidence of the officer's "ill-will" can come into play in "assessing the credibility of an officer's account of the circumstances that prompted the use of force." Id. at 399 n.12. Therefore, contrary to Rankin's assertions, Graham does not indicate that evidence of motive—such as the Facebook postings—is irrelevant to the § 1983 calculus.

Rankin's motive and credibility could also weigh on Johnson's gross negligence and battery claims. In Virginia, "'[g]ross negligence' is that degree of negligence which shows an utter disregard of prudence amounting to complete neglect of the safety of another," Frazier v. City of Norfolk, 362 S.E.2d 688, 691 (Va. 1987), and battery is the "unwanted touching which is neither consented to, excused, nor justified," Koffman v. Garnett, 574 S.E.2d 258, 261 (Va. 2003). If Rankin was

13

untruthful about whether Denyakin charged at him, it could affect both of these claims by showing the unreasonableness of, and lack of justification for, his actions. The district court therefore erred in concluding that the evidence was irrelevant per se because it spoke to Rankin's motivation.

But the error was not plain. Apart from the credibility issue, the Facebook postings are irrelevant to Rankin's liability in this case. As we explained above, Rankin's motivation does not affect his liability under § 1983 due to the Supreme Court's Graham decision. Rankin does not dispute that he intended to shoot Denyakin, and his motive is irrelevant to the battery inquiry apart from his justification for doing so. See id. Finally, because the tort of negligence is governed by an objective standard, see Sturman v. Johnson, 163 S.E.2d 170, 176 (Va. 1968); see also Va. Elec. & Power Co. v. Dungee, 520 S.E.2d 164, 174 (Va. 1999), Rankin's Facebook postings are not pertinent to this claim beyond their bearing on Rankin's credibility. In sum, although the Facebook postings are relevant to Rankin's liability, they are relevant in such a limited way that we cannot say that their exclusion affected Johnson's "substantial rights" or contravened the fairness and integrity of the trial. See Olano, 507 U.S. at 734.

This is especially so given that, in addition to excluding the evidence for lack of relevance, the district court also

14

found that it was inadmissible under Federal Rule of Evidence 403. The court agreed with Johnson's assessment that the postings were particularly probative with respect to punitive damages. However, the court explained that the postings had limited probative value with respect to Rankin's liability under the Graham objective reasonableness test. The court also found the postings "inflammatory" and opined that they could "take[] everything off the track of what the jury should be deciding" and "could skew a trial." In light of the postings' limited relevance to Rankin's liability and their high prejudicial value, we determine that the district court did not err by excluding these postings from the liability phase of the trial pursuant to Rule 403.

IV.

Finally, Johnson argues that the district court erred in excluding an autopsy photograph showing a gunshot wound to Denyakin's hand. Johnson contends that the photograph is especially probative of Rankin's credibility because it shows that the bullet entered Denyakin's hand through the palm, making it unlikely that Denyakin's hand was in his pants at the time of the shooting. The court found that the photograph's prejudicial effect outweighed its probative value after Kinnison—the doctor who conducted the autopsy—testified that the photograph did not

15

make her any more sure of whether Denyakin's hand was palm-forward when the bullet entered it.  Kinnison testified that she "favored" the theory that the bullet entered through Denyakin's palm based on the skin "tags"—or tears—on his hand.  She then illustrated how she believed the bullet entered Denyakin's hand using her own hand.  However, Kinnison emphasized that she was "not entirely certain" about how the bullet hit Denyakin's hand or what position he was in when he received the injury.

Johnson contends that the district court erred in hinging the photograph's admissibility on whether it would aid Kinnison in illustrating her testimony.  However, the court simply used the photograph's usefulness to Kinnison to gauge its probative value for the Rule 403 balancing test.  This Court has recognized that autopsy photographs are highly prejudicial,[3] and it will not disturb a district court's decision regarding their admissibility "absent a clear abuse of discretion."  <u>United States v. Analla</u>, 975 F.2d 119, 126 (4th Cir. 1992).  In light

---

[3]  Johnson recognizes that photographs of dead bodies are highly prejudicial, arguing that the district court's ruling regarding the autopsy photograph was arbitrary and capricious because it admitted a more graphic photograph from the scene of the shooting.  However, Johnson simply cites the photograph itself as support for his argument and does not explain why the district court's decision was arbitrary or capricious.  We therefore see no reason to conclude that the district court abused its discretion by disallowing the autopsy photograph but admitting the scene photograph.

of the abuse of discretion standard and the prejudicial effect of autopsy photographs, we determine that the district court did not err in excluding the photograph, even if it had some probative value.

V.

For the foregoing reasons, we hold that the district court did not abuse its discretion in (1) allowing evidence of Denyakin's alcoholism and prior encounter with police under Federal Rule of Evidence 404(b), (2) excluding Rankin's Facebook postings from the liability phase of the trial, and (3) excluding the autopsy photograph showing Denyakin's hand. We therefore affirm the district court's evidentiary determinations.

AFFIRMED

17