# CIRCUIT COURT OF THE CITY OF PORTSMOUTH

Commonwealth of Virginia

v.

Stephen D. Rankin

April 7, 2016

Case No. CR15-1398

BY JUDGE JOHNNY E. MORRISON

Having had the opportunity to review Defendant's Motion for a Bill of Particulars, Defendant's Motion in Limine to exclude evidence of or reference to the 2011 shooting, Defendant's Motion in Limine to exclude from evidence mobile messages, the Commonwealth's opposition to each of the motions, Defendant's Reply To Commonwealth's Opposition to Defendant's Motion in Limine (as to the 2011 shooting), Commonwealth's Brief in Response to Defendant's Reply to Commonwealth's Opposition to Defendant's Motion in Limine (as to the 2011 shooting), Commonwealth's Motion in Limine to preclude mention of William Chapman's alleged theft from Walmart, except that he was suspected of shoplifting, Commonwealth's Motion To Enjoin Appearance of Uniformed Law Enforcement Officers, and the arguments presented by counsel, the Court hereby grants in part and denies in part the Defendant's Motion for a Bill of Particulars, grants Defendant's Motion in Limine to exclude evidence of or reference to the

2011 shooting, grants Commonwealth's Motion in Limine to preclude mention of William Chapman's alleged theft from Walmart, except that he was suspected of shoplifting, denies Commonwealth's Motion to Enjoin Appearance of Uniformed Law Enforcement Officers, and takes Under Advisement the Defendant's Motion in Limine to exclude from evidence the mobile messages.

## Background

On September 3, 2015, Stephen D. Rankin, a Portsmouth Police Officer, was indicted by a Grand Jury for First Degree Murder after he shot and killed William Lester Chapman, II. Specifically, the indictment states: "On or about April 22, 2015, [Stephen D. Rankin] did willfully, deliberately and with premeditation kill and murder William Lester Chapman, II, in the first degree, in violation of §§ 18.2-32 and 18.2-10 of the Code of Virginia (1950), as amended." He was also indicted for Use of a Firearm in the Commission of a Felony. The indictment states: "On or about April 22, 2015, [Stephen D. Rankin] did use, attempt to use, or display in a threatening manner, a firearm, while committing or attempting to commit murder, in violation of § 18.2-53.1 of the Code of Virginia (1950), as amended." Both the Defendant and the Commonwealth filed several motions that were heard on January 5, 2016. The Court took three of the motions under advisement: Defendant's Motion *in Limine* to exclude from use at trial any evidence or reference, oral or written, to a shooting in 2011 by the Defendant, which was not indicted; Defendant's Motion *in Limine* to exclude from evidence the mobile messages from April 11, 2015, from the Defendant to the police dispatcher; and Defendant's Motion for Bill of Particulars. The Commonwealth then filed additional motions that were heard on February 23, 2016. The Court took under advisement the Commonwealth's Motion *in Limine* to preclude mention of William Chapman's alleged theft from Walmart, except that he was suspected of shoplifting, and Commonwealth's Motion To Enjoin Appearance of Uniformed Law Enforcement Officers.

## Discussion

### A. *Motion for a Bill of Particulars*

Defendant's Motion for a Bill of Particulars requests the Commonwealth to identify each and every act that was committed by the Defendant that would establish premeditation. Moreover, the Defendant requests that the Commonwealth state with particularity which means of first degree murder under § 18.2-32 is alleged, identify any witnesses that would establish evidence of premeditation, and identify each item of physical or forensic evidence that would establish premeditation. The Commonwealth responds that it presented the indictment to the Grand Jury, which was returned as

an indictment with a true bill, and that the information contained in the indictment sufficiently informs the accused of the nature and cause of the accusation against him pursuant to Virginia Code § 19.2-221. It argues that the Commonwealth has no duty under the rules of discovery, or any other rules, to tell the defense specifically which reason the Commonwealth is alleging the Defendant committed premeditation with regard to the offense.

Virginia Code § 19.2-230 governs the Bill of Particulars. It states:

> A court of record may direct the filing of a bill of particulars at any time before trial. A motion for a bill of particulars shall be made before a plea is entered and at least seven days before the day fixed for trial and the bill of particulars shall be filed within such time as is fixed by the court.

However, a defendant is not entitled to a bill of particulars as a matter of right. Instead, the determination to require the Commonwealth to file a bill of particulars rests within the discretion of the trial court. *Quesinberry v. Commonwealth*, 241 Va. 364, 402 S.E.2d 218 (1991), *cert. denied*, 502 U.S. 834, 112 S. Ct. 113, 116 L. Ed. 2d 82 (1991). Moreover, as long as an indictment sufficiently recites the elements of the offense, the Commonwealth is not required to include all evidence upon which it plans to rely to prove a particular offense. A criminal defendant should not be permitted to use a bill of particulars to expand the scope of discovery. *Sims v. Commonwealth*, 28 Va. App. 611, 507 S.E.2d 648 (1998). The purpose of a bill of particulars is to state facts in a way such that the defendant is informed in advance of the offense for which he is to be tried and he is not entitled to more than that. *Swisher v. Commonwealth*, 256 Va. 471, 506 S.E.2d 763 (1998), *cert. denied*, 528 U.S. 812, 120 S. Ct. 46, 145 L. Ed. 2d 41 (1999).

In the instant case, the Defendant has been charged with first degree murder, which is defined in § 18.2-32 of the Virginia Code. Specifically, this Code section defines first degree murder as:

> Murder, other than capital murder, by poison, lying in wait, imprisonment, starving, or by any willful, deliberate, and premeditated killing, or in the commission of, or attempt to commit, arson, rape, forcible sodomy, inanimate or animate object sexual penetration, robbery, burglary or abduction, except as provided in § 18.2-31.

The Grand Jury indictment states, as to the charge of First Degree Murder, that "On or about April 22, 2015, [Stephen D. Rankin] did willfully, deliberately and with premeditation kill and murder William Lester Chapman, II, in the first degree, in violation of §§ 18.2-32; 18.2-10 of the Code of Virginia (1950), as amended." Therefore, the indictment itself,

states with particularity which means of first degree murder under § 18.2-32 is alleged. However, the Court will require that the Commonwealth provide the Defendant with the date, time, and location of the offense for which he is charged.

B. *Defendant's Motion in Limine To Exclude Evidence of or Reference to the 2011 Shooting*

Rule 2:404 of the Virginia Rules of Evidence governs the introduction of evidence pertaining to "other crimes, wrongs, or acts." Specifically, this Rule states:

> Except as provided in Rule 2:413 or by statute, evidence of other crimes, wrongs, or acts is generally not admissible to prove the character trait of a person in order to show that the person acted in conformity therewith. However, if the legitimate probative value of such proof outweighs its incidental prejudice, such evidence is admissible if it tends to prove any relevant fact pertaining to the offense charged, such as where it is relevant to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, accident, or if they are part of a common scheme or plan.

While the Commonwealth contends that the 2011 shooting demonstrates intent and motive, the Defense argues, in essence, that evidence surrounding the circumstances of the 2011 shooting is not relevant, as the two incidents are distinct and unrelated. Moreover, the Defense argues that such evidence is highly prejudicial to the Defendant, and that any probative value of the reference to this shooting is outweighed by the prejudice to the Defendant of such reference being put in front of a jury.

On February 8, 2012, the Commonwealth presented the Grand Jury with an indictment of Stephen D. Rankin for voluntary manslaughter. The indictment, which was returned "not a true bill," stated: "On or about April 23, 2011, [Stephen D. Rankin) did feloniously and unlawfully kill Kirill Denyakin, without malice, in violation of §§ 18.2-35; 18.2-10 of the Code of Virginia (1950), as amended." The Commonwealth elected not to present the indictment to a Grand Jury a second time, which it was entitled to pursuant to Virginia Code § 19.2-203. Moreover, it has been over four years since the Grand Jury was presented with the indictment charging Stephen D. Rankin with voluntary manslaughter, and returned it not a true bill, and the Commonwealth still has not presented the indictment to another Grand Jury.

Kirill Denyakin's family filed a civil suit against Stephen Rankin in the U.S. District Court for the Eastern District of Virginia, alleging excessive force and seeking $22 million in damages. The jury in the trial ruled on

three counts in early March of 2012, and held that Stephen Rankin did not violate Kirill Denyakin's rights by using excessive force, did not act with gross negligence, and did not commit unprovoked assault and battery causing death. *Johnson v. Rankin*, 547 Fed. Appx. 263, 264 (4th Cir. 2013) (unpublished opinion).

The Court is of the opinion that allowing evidence of the 2011 shooting would effectively mean that the criminal and civil cases arising from the 2011 shooting would have to be relitigated in the course of the instant trial. The Court agrees with the Defense that such evidence would be highly prejudicial to the Defendant and that any legitimate probative value of the evidence does not outweigh such prejudice.

### C. *Defendant's Motion in Limine To Exclude from Evidence Mobile Messages*

Defendant's Motion *in Limine* seeks to exclude evidence from mobile messages that occurred between himself and his dispatcher over the course of the day and evening leading up until the time of the shooting. Defendant argues that the messages between the Defendant and the dispatcher are not relevant because they are unrelated to the shooting. Moreover, the Defendant argues that reference to such messages is not probative of any fact in the case and is highly prejudicial to the Defendant. The Commonwealth argues, in response, that the messages serve to establish the Defendant's state of mind and intent, and that they were sent less than an hour before the incident at hand. Moreover, the Commonwealth argues that under Rule 2:402 of the Virginia Rules of Evidence, all relevant evidence is admissible except as otherwise provided. While acknowledging that relevant evidence is to be excluded if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice or the likelihood of confusing or misleading the jury, the Commonwealth argues that there is nothing to suggest that the messages would be overly prejudicial to the Defendant.

At this time, the Court cannot make a determination as to whether or not these messages would be overly prejudicial or even if they are relevant, without first reviewing the messages in camera. The Court requests that the Defense and the Commonwealth obtain and provide the Court with a transcript of the mobile messages in question. The Court will rule on the Motion after reviewing the messages in camera.

### D. *Commonwealth's Motion in Limine To Preclude Mention of Facts Surrounding William Chapman's Alleged Theft from Walmart, Except That He Was Suspected of Shoplifting*

In support of its Motion *in Limine*, the Commonwealth argues that the victim's character for violence, turbulence, or aggression is admissible only when the defendant has indicated that he is going to have a self-defense

claim. The Commonwealth further argues that while the defendant has not stated his intent to offer the defense of self-defense, this type of evidence is not probative of that type of character trait. The Commonwealth concedes that the Defendant is entitled to state the reason why police responded on the day that Lester Chapman was killed. The Defense responds that the jury is entitled to understand the full context of the case, and that it would be unfair for the jury to only hear the end of the story without hearing what happened before. The Court is of the opinion that by limiting testimony to statements that Officer Rankin was responding to a shoplifting call, and that the victim was a suspect, the jury will have sufficient information to understand the full context of the case, without introducing evidence that would be unfairly prejudicial to the Commonwealth.

E. *Commonwealth's Motion To Enjoin Appearance of Uniformed Law Enforcement Officers*

In support it its Motion To Enjoin Appearance of Uniformed Law Enforcement Officers, the Commonwealth cites *Holbrook v. Flynn*, 475 U.S. 560, 106 S. Ct. 1340, 89 L. Ed. 2d 525 (1985); *Bell v. Commonwealth*, 264 Va. 172, 563 S.E.2d 695 (2002); and *Commonwealth v. Simmons*, 79 Va. Cir. 352 (Chesapeake City 2009).

In Holbrook, the question before the Court was whether a criminal defendant was denied his constitutional right to a fair trial when the usual courtroom security force was supplemented by four uniformed state troopers sitting in the first row of the spectator's section. *Holbrook*, 475 U.S. at 562. The Defense objected to their presence as a display of strength in the presence of the jury and stated that the presence of uniformed officers would suggest to the jury that the defendants were of bad character. The presiding justice in the case replied that the state troopers were there because the usual courtroom security personnel were overextended at the time. In view of the need for courtroom safety, and his belief that the troopers' presence did not affect the defendants' ability to receive a fair trial, the justice ruled that the troopers could remain in the courtroom. *Id.* at 563. After interlocutory review, an appeal to the Rhode Island Supreme Court, a habeas petition in the Federal District Court, an appeal to the Federal Appeals Court, and finally an appeal to the United States Supreme Court, the convictions were upheld. *Id.* at 563-68.

The Supreme Court held:

> Central to the right to a fair trial, guaranteed by the Sixth and Fourteenth Amendments, is the principle that 'one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial.'

> This does not mean, however, that every practice tending to single out the accused from everyone else must be struck down
> . . . .
> The first issue to be considered here is . . . whether the conspicuous, or at least noticeable, deployment of security personnel in a courtroom during a trial is the sort of inherently prejudicial practice that . . . should be permitted only where justified by an essential state interest specific to each trial. *We do not believe that it is.*

*Id.* at 568-69 (quoting *Taylor v. Kentucky*, 436 U.S. 478, 485, 98 S. Ct. 1930, 56 L. Ed. 2d 468, (1978)) (emphasis added).

At the outset, the Court notes that the case at hand is distinguishable, because, while *Holbrook* dealt with the potential prejudice to the defendant as a result of what might look like heightened security, the case before the Court deals with the potential for the Commonwealth to be prejudiced by the presence of uniformed police officers showing solidarity with Defendant Rankin.

The Commonwealth asserts, in its Motion, that "The *Holbrook* Court stated that the appearance of a security force in the courtroom might 'create the impression in the minds of the jury that the defendant is dangerous or untrustworthy.'" (Commonwealth's Motion ¶ 4) (quoting *Holbrook*, 475 U.S. at 569). However, looking at the quote in context gives it a significantly different tone:

> To be sure, it is possible that the sight of a security force within the courtroom might under certain conditions create the impression in the minds of the jury that the defendant is dangerous or untrustworthy. However, reason, principle, and common human experience counsel against a presumption that any use of identifiable security guards in the courtroom is inherently prejudicial. In view of the variety of ways in which such guards can be deployed, we believe that a case-by-case approach is more appropriate.

*Holbrook*, 475 U.S. at 569 (internal quotations and citations omitted).

Assuming, *arguendo*, that *Holbrook* even applies in the case at hand, the test for whether a courtroom arrangement is inherently prejudicial is whether "an unacceptable risk is presented of impermissible factors coming into play." *Id.* at 570. (internal quotations and citations omitted). The Court does not believe that an unacceptable risk is presented.

In *Bell v. Commonwealth*, 264 Va. 172, 563 S.E.2d 695 (2002), a jury convicted Edward Nathaniel Bell of capital murder for killing a law enforcement officer of the Winchester Police Department. On an appeal of his death sentence, Bell contended that the court erred in denying his

"motion to prohibit law enforcement officers from wearing their uniforms when attending the trial as spectators." *Id.* at 199. As the Supreme Court of Virginia observed in its opinion, the trial court did not deny his motion in full. Rather, the trial court ruled that officers in the trial as witnesses, bailiffs, or security guards, could wear their uniforms and that it would not prevent on-duty police officers from coming into the courtroom while in uniform. The trial court did state that if too many officers attended the trial as spectators while in uniform, it could create an oppressive atmosphere and that it would address that issue if and when it occurred. Bell failed to raise the issue during the course of the trial, leading the Supreme Court of Virginia to conclude that an oppressive atmosphere never occurred. *Id.*

The case at hand is distinguishable from *Bell.* In *Bell,* the uniformed police officers were attending the trial in support of the victim, a fellow law enforcement officer who was killed by the defendant. In the case at hand, the police officers would be in the courtroom to support Defendant Rankin, or so the Commonwealth contends.

Defendant Rankin could easily make a similar argument with respect to individuals from the community who wish to support the victim and his family: that too many individuals from the community appearing in support of the victim could create an oppressive atmosphere. In the January 5th hearing, the Court denied the Defendant's Motion To Transfer Venue. The Court was not persuaded that a Portsmouth jury would not perform its function as an impartial trier of fact simply because the jurors will have to answer to the community. Following the same logic when considering the instant motion, the Court is not persuaded that the jury would be unable to perform its duty as an impartial trier of fact because of the presence of uniformed law enforcement officers.

In the case at hand, it is reasonable, based on common human experience, to infer that there will be some individuals present in the spectators area who are there to support the victim, just as there will be some spectators present who are there to support the Defendant. The Court cannot fairly and justly limit the appearance of one group without limiting the other. Moreover, it would be impractical for the Court, in the case at hand, to stop every uniformed police officer entering the courtroom to determine whether they are on or are not on duty.

The Commonwealth is correct that exclusion of uniformed law enforcement officers from attendance at trial is not unprecedented in Virginia. However, *Commonwealth v. Simmons,* the case the Commonwealth cites, is not binding precedent on this Court.

In *Simmons,* the Court ruled that "only law enforcement officers on duty or called as witnesses will be allowed in the courtroom in uniform. Off-duty law enforcement officers are welcome to attend, but must be attired in civilian clothes. The Court will rule on individual cases if it becomes necessary. The reason for this is to have as neutral an atmosphere as

possible within the courtroom so as to allow the jury to focus on its duties." *Commonwealth v. Simmons,* 79 Va. Cir. at 355 (citing *Bell,* 264 Va. at 199).

In evaluating the particular case at hand, this Court believes that a neutral atmosphere might be best obtained by permitting the presence all parties who wish to attend. Were the Court to exclude uniformed police officers, it would feel compelled to also exclude supporters of the victim or his family, and the Court does not believe that setting such a precedent is prudent.

The Court declines to limit the number of uniformed law enforcement officers present in the courtroom, just as it would decline to limit the number of supporters from the community who wish to appear on behalf of the victim or his family.